**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**DETROIT VITAL FOODS, INC., Lelord Kordel and Alfred Feldten,**
**Defendants-Appellants.**

**No. 17639.**

United States Court of Appeals
Sixth Circuit.

Feb. 20, 1969.

Certiorari Denied June 2, 1969.
See 89 S.Ct. 1997.
Certiorari Granted June 2, 1969.
See 89 S.Ct. 1998.

Solomon Friend, New York City, for appellants, Bass & Friend, New York City, Allan D. Behrendt, Detroit, Mich., on the brief.

Milton J. Traumbauer, Jr., Asst. U. S. Atty., Detroit, Mich., for appellee, Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief, William W. Goodrich, Asst. Gen. Counsel, Walter E. Byerley, Atty., Dept. of Health, Education and Welfare, Washington, D. C., of counsel.

Before O'SULLIVAN and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

COMBS, Circuit Judge.

The defendants were found guilty by a jury on five counts of an indictment charging them with introduction into interstate commerce of misbranded drugs and with causing a drug to be misbranded after it had been shipped in interstate commerce. 21 U.S.C. § 331(a) and (k). The defendant Kordel was sentenced to two years imprisonment and to a fine of $10,000.00. The defendant Feldten was sentenced to one year imprisonment, suspended to thirty days with three years probation, and to a fine of $2,000.00. A total fine of $10,000.00 was imposed upon the corporate defendant.

Detroit Vital Foods, Inc., is a Michigan corporation with headquarters in Detroit. The defendants Kordel and Feldten were its president and vice president, respectively. During 1959, 1960, and 1961, Kordel traveled across the country delivering a series of lectures in different cities. Advertisement of the lectures preceded his appearance and the public was invited to attend. The meetings were held in public halls or auditoriums leased for the occasion by the defendants. Sales booths were established in or near the lecture halls where the audience could purchase the company's products Aminex, Frutex, Nutri-Time, Korleen, and other products not here in question, usually at special introductory prices. The company's products were sold not only at the lectures but were generally available in health food stores. Each package had a label attached which described the contents and gave directions for use.

Kordel was the author of numerous books and leaflets, such as "Eat and Grow Younger", "How to Make People Like You", "Health Through Nutrition", and "Is This a New Way to Strengthen Your Heart?"

The books and lectures were discussions of how various physical ailments could be alleviated by the intake of certain foods and food elements. The best source of these foods and food elements, it was said, were the products offered for sale by the defendants. Leaflets distributed to the lecture audiences were to the effect that the statements made were the personal opinion of the speaker and author and that a physician should be consulted in regard to specific diseases.

Feldten made no speeches but acted as Kordel's assistant. He sold the products at lectures and took orders for products to be shipped from Detroit.

Kordel in his lectures and published material advertised some products by name. In other instances, he merely

related certain chemicals or food elements to the improvement of various physical ailments and recommended the company's products as the best source. For example:

A combination of chlorine, methionine, and inositol—exactly the ingredients of Korleen—is a successful treatment for cirrhosis of the liver.

Varicose veins existing for twenty-five years were cured in three months with the intake of three Korleen tablets per day.

People may "protect" their bodies from headaches, colds, stiff ankles, poor circulation, gas, constipation, and poor digestion by partaking of a concentrated source of seventy-two different vitamins, minerals, and nutrients—coincidentally, the product which contains all those ingredients is Nutri-Time.

Vitamin C is a preventive and cure for bleeding gums, sore throat, earache, swollen neck glands, pneumonia, and acute rheumatism—the best source of Vitamin C is Frutex.

Protein helps form antibodies to fight infection and is the first line of defense; it is most efficiently assimilated within the body when introduced in the form of a concentrated protein tablet—the recommended source is Super Protein Aminex which has a high concentrate of protein and all aminal acids in the proper balance.

Kordel occasionally stated that his remarks had no relation to drugs, that he spoke only of natural nutrients used as food supplements.

Several grounds of assigned error were argued in briefs but we consider it necessary to discuss only one. We hold that the judgments against the individual defendants must be reversed because they were compelled to give testimony against themselves in violation of the Fifth Amendment to the United States Constitution.

While defendants were under investigation for possible criminal violation of the Food, Drug and Cosmetic Act, the Government instituted a civil action against Detroit Vital Foods, Inc., to condemn certain quantities of their products Korleen and Frutex, asserting that these articles were misbranded. In the civil action the defendants were served with extensive written interrogatories seeking comprehensive and detailed information about the corporate defendant and the activities of the individual defendants in connection with the company's business. Before these interrogatories were answered defendants were notified that the Government contemplated taking criminal action against them because of their activities in connection with Korleen and Frutex.

The defendants filed objections to being required to answer the interrogatories and moved to stay the civil proceedings pending outcome of the contemplated criminal action. The objections and motion were denied by the Honorable Theodore Levin, United States District Judge for the Eastern District of Michigan, who reasoned that the defendants would not necessarily be prejudiced since there was no certainty when, or if, a criminal action would be brought. The defendants then filed answers to the interrogatories pursuant to Judge Levin's order. Much of the information supplied by the defendants in answer to the interrogatories was necessary to the Government's case in the criminal prosecution.

Prior to the trial of this action, the defendants moved to quash the indictment and to suppress all evidence and leads obtained by the Government in the civil action. The trial judge, Honorable Ralph M. Freeman, granted a hearing on the motions and thereafter denied them. It was developed at the hearing that the civil case and the investigation of the criminal case went forward on a common front. Information obtained in the civil case was transmitted to those in charge of the criminal investigation, and recommendation for criminal prosecution was not made until after Judge Levin had ordered the interrogatories

to be answered in the civil case. The interrogatories were prepared by Mr. Randolph of the Food and Drug Administration in Washington, who made the initial decision to recommend criminal action against the defendants. The answers to the interrogatories were sent to Mr. Randolph and the indictment was prepared in Randolph's office.

■ In no sense was the action of the defendants in answering the interrogatories voluntary. When ordered to do so after their objections had been overruled, they had three possible courses available to them. They could still have refused to answer. This almost certainly would have resulted in the forfeiture of their property which had been seized by the Government. They could have given false answers to the interrogatories. This would have subjected them to possible prosecution for perjury. Their third course was to supply the required information, thereby possibly incriminating themselves in the contemplated criminal action. In choosing the third course defendants supplied the Government with evidence and leads helpful in securing their indictment and subsequent conviction. Their choice was a hard one and the specific question is whether they should have been required to make a choice. We think not. A person may not be required to supply information which may possibly incriminate him upon penalty of suffering a forfeiture of his property. This is a "compelling" which is prohibited by the Fifth Amendment. The early case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), is in point.

*Boyd* was a civil action to seize goods allegedly imported without the payment of customs duties. The Government attempted to subpoena invoices which were in the possession of the defendants. The Supreme Court, regarding the action as having a "quasi-criminal" nature, denied the Government's right to subpoena the invoices, holding that,

"[A] compulsory production of the private books and papers of the owners of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the fifth amendment to the constitution, and is the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the fourth amendment." 116 U.S. at 634, 635, 6 S.Ct. at 534.

The same principle was involved in Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). There, certain policemen had been convicted of a conspiracy to obstruct the administration of the New Jersey traffic laws. The policemen appealed on the ground that statements obtained in violation of their privilege against self-incrimination were used as evidence to convict them. The incriminatory statements were obtained during an investigation by the New Jersey Attorney General into the fixing of traffic tickets. The policemen were questioned during this investigation, after being informed of their privilege against self-incrimination but were warned that if they refused to answer they could be removed from their jobs.

They answered the questions, and their answers were later used to convict them. The Supreme Court reversed the convictions and held that the use of the statements violated the petitioners' privilege against self-incrimination. The Court said:

"The choice given the petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or remain silent. That practice, like interrogation practices we reviewed in Miranda v. [State of] Arizona, 384 U.S. 436, 464–465, [86 S.Ct. 1602, 16 L.Ed.2d 694,] is 'likely to exert such pressure upon an individual as to disable him from making a free and rational choice.' We think the statements were infected by the coercion inherent in this scheme of

questioning and cannot be sustained as voluntary under our prior decisions." 385 U.S. at 497, 498, 87 S.Ct. at 618, 619.

■ The Supreme Court has consistently held that a penalty may not be placed upon one for exercising his privilege against self-incrimination. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), and Slochower v. Board of Education, etc., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). Also see United States v. Parrott, 248 F.Supp. 196 (D.D.C.1965); United States v. Thayer, 214 F.Supp. 929 (D.C.Colo. 1963); Lord v. Kelley, 223 F.Supp. 684 (D.C.Mass.1963); United States v. Lipshitz, 132 F.Supp. 519 (E.D.N.Y.1955); and United States v. Guerrina, 112 F. Supp. 126 (E.D.Pa.1953).

At the hearing held by Judge Freeman on the motion to quash the indictment and to suppress evidence obtained through the interrogatories, evidence was heard on the issue of the Government's good faith in bringing the civil action. Judge Freeman concluded that the civil action was brought in good faith and was not a subterfuge to obtain evidence for a criminal prosecution. He held therefore that the evidence was not tainted, relying on Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

*Abel* is not controlling here. That case involved a search and seizure issue; compulsory self-incrimination was not involved. The civil and criminal charges in *Abel* were only remotely related and it was by chance that evidence helpful in a criminal prosecution was obtained in the search. Moreover, the limits of the search were much more restricted than is the scope of permissible inquiry in civil interrogatories. In *Abel* it was conceded that the questioned evidence was obtained during a legal search of the defendant's hotel room after he was arrested on a deportation charge. It was claimed by the defendant that the Government was primarily interested in prosecuting him for espionage and that the search of his room was a ruse by Government agents to obtain evidence in the espionage case. The good faith of the Government agents was the issue in question. The question here is whether defendants were coerced to testify against themselves. If they were coerced within the meaning of the Fifth Amendment, the violation cannot be condoned merely because the Government agents acted in good faith. It is little comfort to the aggrieved party that those who deprive him of a constitutional right are men of good intentions.

■■ The Government contends that the Fourth and Fifth Amendments do not prohibit the use of subpoenaed corporate books and records in a criminal prosecution against the corporation and its officers, citing Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917 (1923), and Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). These and other subsequent cases do so hold, but these interrogatories went far beyond a subpoena for corporate books and records. Kordel was president of the company and Feldten was vice president. Feldten signed the answers to the interrogatories in his capacity as vice president but Kordel, as president, was under the same compulsion as Feldten to furnish the answers. Although the privilege against self-incrimination is personal, United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), the interrogatories were for the most part requests for admissions by and information about the individual defendants, Kordel and Feldten. Many of the interrogatories required answers revealing Kordel's activities, speeches, and representations then under scrutiny in the contemplated criminal action. An officer in a corporation does not lose his personal privilege against self-incrimination under the Fifth Amendment by reason of his corporate position.

In *Wilson*, which is a forerunner of those cases holding that corporation officers may not invoke their Fifth Amendment rights to prevent the production

of corporate records, Mr. Justice Hughes drew the distinction in these words:

"They may decline to utter upon the witness stand a single self-incriminating word. They may demand that any accusation against them individually be established without the aid of their oral testimony or the compulsory production by them of their private papers." 221 U.S. at 385, 31 S.Ct. at 546.

█ It is said in the Government's brief that all of the evidence used in the criminal case was obtained by independent investigation and that evidence obtained through the interrogatories was not used in the criminal action. We find no tangible support in the record for this statement. It is admitted by Mr. Fowler, the Government agent on whose testimony the indictment was returned—he was the only witness who appeared before the grand jury, that he used the answers to the interrogatories in preparing his testimony before the grand jury. There is no showing by the Government that any attempt was made at any stage of the proceedings to separate the two cases. There is no testimony or avowal by those who investigated and prosecuted the criminal case that they failed to use evidence and leads obtained through answers to the interrogatories. It is admitted by Government witnesses that in the enforcement of the Federal Food, Drug and Cosmetic Act it is not unusual for the Government first to commence a civil action and then use information obtained in that case in parallel criminal proceedings. Information obtained from whatever source is placed in one general file. We note, too, that the interrogatories submitted by the Government were broader than would ordinarily be needed in a civil case. Some of the interrogatories were directed specifically toward the activities of Leland Kordel, president of Detroit Vital Food, Inc., and the principal defendant in this case. We conclude from this record that evidence and leads obtained by reason of the interrogatories were used against the defendants in the criminal case.

█ It is pointed out by the Government that the Fifth Amendment privilege against self-incrimination is available only to natural persons and not to a corporation. We agree that this defense is not available to the corporate defendant, Detroit Vital Foods, Inc. Campbell Painting Corp. v. Reid, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968).

█ It is also argued by the Government that the Fifth Amendment privilege is not available to the individual defendant Kordel because he made no claim to the seized property and supplied no answers to the interrogatories. With this argument we do not agree. It is clear from the record that Detroit Vital Foods, Inc., was merely the corporate device through which Kordel sold his products. The Government naturally wanted to cut through the facade and get to Kordel who was the president and dominant personality in the corporation. Although the extent of Kordel's ownership in the corporation is not disclosed by the testimony before us, he evidently was a major stockholder. He therefore had a financial interest in the seized property and certainly, as president of the company, he participated in the decision to answer the interrogatories. Aside from this, if it should be conceded that Kordel was under no coercion to answer the interrogatories, we are of the opinion that Feldten's admissions were not admissible against him under the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We conclude therefore that evidence and leads obtained by reason of the interrogatories should have been suppressed against the individual defendants in the criminal case.

█ We do not hold that a government agency may not institute and prosecute civil proceedings on charges that may also involve a possible criminal proceeding against the same persons. We hold merely that the Government may not use evidence against a defend-

ant in a criminal case which has been coerced from him under penalty of either giving the evidence or suffering a forfeiture of his property.

The judgment is reversed as to the individual defendants, Kordel and Feldten, and the case is remanded for proceedings consistent with this opinion. The judgment is affirmed as to the corporate defendant, Detroit Vital Foods, Inc.