**UNITED STATES of America**

**v.**

**SECOND NATIONAL BANK OF NASHUA, N. H. and New Hampshire Insurance Co. and Ivan Wallace Brown.**

**SECOND NATIONAL BANK OF NASHUA, N. H. and New Hampshire Insurance Co.**

**v.**

**Ivan Wallace BROWN.**

**Civ. A. No. 3023.**

United States District Court
D. New Hampshire.

Dec. 5, 1969.

David A. Brock, U. S. Atty., Concord, N. H., for plaintiff.

Dort S. Bigg, Wiggin, Nourie, Sundeen, Pingree & Bigg, Manchester, N. H., for defendant Second National Bank of Nashua, N. H.

Daniel F. Featherston, Jr., Boston, Mass., for defendant Ivan Wallace Brown.

## RULING AND ORDER ON MOTION TO COMPEL ANSWERS TO INTERROGATORIES

BOWNES, District Judge.

This is a ruling on a motion to compel answers to interrogatories filed in an interpleader action brought by the United States, under 28 U.S.C. § 1345 (1964), to determine which defendant is entitled to a certain sum of money in the amount of $14,421.00 now held by the Government. The defendant Second National Bank of Nashua (the Bank) brought the motion asking that defendant Brown be compelled to answer interrogatories which he had refused to answer on the grounds that his answers might tend to incriminate him. (See appended interrogatories.)

In order to fully understand this ruling, it is necessary to set forth the facts leading up to this case. On February 13, 1969, the Second National Bank of Nashua, New Hampshire, Simoneau Plaza Branch, was robbed of $31,339.77. On February 14, 1969, the money in controversy here was seized by F.B.I. Agents at an apartment in Dorchester, Massachusetts, from an attache case owned by the defendant Brown, who was not present at the time of the seizure. As a result of this seizure, *inter alia*, defendant Brown was indicted on March 13, 1969, for the robbery of the Second National Bank. In the criminal case brought against him, United States v. Brown, Cr. No. 6928 (D.N.H. July 16, 1969), defendant Brown moved to suppress the money as evidence on Fourth Amendment grounds. After an evidentiary hearing, the motion to suppress was granted on July 10, 1969. United States v. Brown, 300 F.Supp. 1285 (D.N.H. 1969). The Court did not order the money returned to the defendant. At a conference in chambers on July 15th, preliminary to the trial-in-chief, counsel for the defendant asked that the money be returned. This request was denied by the Court. The United States Attorney then informed the Court that the Government was interpleading the Bank and Brown to determine which was entitled to the money. At the close of the prosecution's evidence in the trial-in-chief, the defendant's motion for a directed verdict of acquittal was granted by the Court.

The question, at this stage in the proceedings, is whether or not the Court should compel Brown to answer interrogatories which he claims will violate his Fifth Amendment privilege against self-incrimination.

The cases suggested by the defendant Bank in support of its position that Brown has no right to invoke the Fifth Amendment are inapposite. In Kisting v. Westchester Fire Insurance Company, 290 F.Supp. 141 (W.D.Wis.1968), the plaintiff was seeking *affirmative* action against the defendant insurance compa-

ny, claiming a fire loss. One of the requirements of the policy was that a claimant must, in order to collect, give any information relevant to the claim to the insurance company upon its request. The plaintiff refused to answer certain questions at the trial relying upon his Fifth Amendment privilege against self-incrimination, and the defendant moved for a dismissal. The Court found that the questions were relevant and, further, that "[the] plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion." [Citations omitted.] 290 F.Supp. at 149.

The Court might accept the above view in the case of a plaintiff seeking *affirmative* action, but this case is quite different. While the defendant is asserting a claim to the money which was taken from his attache case, he did not institute this action. He was made a party defendant by the Government. He had constructive possession of the money at the time of the seizure, and is, in effect, now defending his right to it against the claim of the Bank. While this case is civil in name and procedure, the Court would be blind to reality if it did not recognize that it is quasi-criminal as to origin and effect.

The Bank also cites as authority for its position Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), and Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). *Walder* concerned the use of evidence found inadmissible in an earlier case, to contradict a defendant's testimony on direct examination in a later case. The Court, in that case, did not even consider the Fifth Amendment and it is, therefore, inapplicable. The defendant here has not suggested, nor could he, that the Bank may not use the money as evidence in this case. Brown v. United States, *supra,* held that a defendant, who took the stand and testified in her own behalf, waived the right to invoke on cross-examination the privilege against self-incrimination regarding matters made relevant by her direct examination. Since Brown has refused to answer all of the interrogatories on Fifth Amendment grounds, there is no question of waiver at this time.

This case is analogous to the landmark case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885), in which the Supreme Court held unconstitutional a statute which required a defendant or *claimant* to produce his private books, papers, etc., if he were to avoid the Government Attorney's allegations being taken as confessed, when such confessed allegations would result in a forfeiture or penalty. The Court held that such a statute was repugnant to the Fourth and Fifth Amendments of the Constitution. The Court stated:

* * * we have to deal with an act which expressly excludes criminal proceedings from its operation (though embracing civil suits for penalties and forfeitures), and with an information not technically a criminal proceeding, and neither, therefore, within the literal terms of the Fifth Amendment to the Constitution any more than it is within the literal terms of the Fourth. Does this relieve the proceedings or the law from being obnoxious to the prohibitions of either? We think not; we think they are within the spirit of both. At 633, 6 S.Ct. at 534.

More recently in United States v. Kordel, 407 F.2d 570 (6th Cir:1969), *cert. granted* 395 U.S. 932, 89 S.Ct. 1998, 23 L.Ed.2d 447 (1969), the Sixth Circuit reversed the conviction of two defendants, which had been obtained by the use of evidence garnered in a civil proceeding to condemn certain quantities of their products. In the civil action, the defendants had been compelled by the District Court to answer interrogatories, in spite of the fact that a criminal action relating to the same products was

contemplated. The Circuit Court noted that, if the defendants had refused to answer, it was almost certain they would have forfeited the property sought to be condemned. Thus, the defendants were forced to choose between either pleading the Fifth Amendment and forfeiting their property or answering the interrogatories and supplying necessary information for the Government's contemplated criminal action. The Court, citing *Boyd*, stated:

> Their choice was a hard one and the specific question is whether they should have been required to make a choice. We think not. A person may not be required to supply information which may possibly incriminate him upon penalty of suffering a forfeiture of his property. This is a "compelling" which is prohibited by the Fifth Amendment. 407 F.2d at 573.

In the case at bar, the Bank is, in effect, asking that Brown be compelled to either give up his right against self-incrimination or forfeit the money to the Bank. The Court recognizes that this case is different than *Kordel* in that Brown cannot incriminate himself as far as the robbery of the Second National Bank is concerned, because he has already been acquitted of that crime. But, to make him answer the interrogatories might give the Government information which might lead to his prosecution for other crimes.[1]

In order to prevail, the Bank must prove by a preponderance of the evidence that the money was part of the loot taken during the robbery. Brown has a constitutional right to refuse to testify on the grounds of possible self-incrimination. The Bank cannot avoid its burden of proof by forcing Brown to choose between invoking his Fifth Amendment rights or losing the money by default.

The Court rules that defendant Brown need not answer the interrogatories.

So ordered.

## APPENDIX

### INTERROGATORIES TO IVAN WALLACE BROWN

Please take notice that defendant-cross claimants, Second National Bank of Nashua and New Hampshire Insurance Co. herein require defendant, Ivan Wallace Brown to answer the following interrogatories within fifteen days from the date of service hereof pursuant to Rule 33 of the Federal Rules of Civil Procedure:

1. State in dollars and cents exactly how much of the $14,421.00 now held by the United States of America in the above action you claim belongs to you.

1a. If not to you, to whom do you claim the money belongs; state name, address and amount of such other person or persons and further state how you came to be holding the money for such person or persons.

2. With respect to the amount claimed to belong to you, if any, stated in answer to interrogatory 1 above, state the name and present address of each person, or entity (hereinafter "source") from whom you obtained all or part of said amount and if parts of said amount were received from different sources, please state in dollars and cents the amount of each part next to the name and address of each source from which that part was obtained.

3. With respect to each source, if any, listed in answer to interrogatory 2

---

1. See Hoffman v. United States, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1950), where the Court stated, in reference to the duty of a court to decide whether the privilege against self-incrimination is properly asserted:

   [It must be] *'perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate. [Emphasis in original.] [Citations omitted.]

above, state what consideration, if any, you provided to said source in return for said amount or part thereof.

4. With respect to each employment, if any, you have had in the past five years, state the name and present address of each employer, the nature of the work, the hiring and termination dates and the average weekly wage in salary.

5. With respect to income or consideration you have received in the past five years other than from the employments, if any, referred to in answer to interrogatory 4 above, state the name and present address of each person or entity, from whom you received it, the amount you received from each person or entity, the date or dates of receipt and the consideration, if any, you provided to such persons or entity in return for such income or consideration received by you.

6. With respect to each source, if any, listed in answer to interrogatory 2 above, please indicate those in which no consideration was exchanged.

7. With regard to the sources listed in response to interrogatory 6 above, please indicate by what transaction or occurrence these funds came into your possession.

8. Please indicate on what date these funds or sources came into your possession.

9. What services or acts did you perform (other than those constituting consideration) in order to obtain these funds.

10. Were the services or acts of other persons required in obtaining the sources listed in answer to interrogatory 6 above.

11. If so, please give the names and addresses of the persons whose services were rendered in obtaining the funds from the sources listed in your answer to interrogatory 6 above.

12. With regard to the sources listed in response to interrogatory 6, were

these funds withdrawn or obtained from the prior possessor with his consent or permission.

13. If they were not withdrawn with his consent or permission, please explain the circumstances of your possession of such funds.

14. If the funds from the sources listed in your answer to interrogatory 12 above were obtained without the prior possessor's permission or consent, please explain in what capacity you presently possess the funds.

15. Has the prior possessor sought return of the funds through any legal action or personal appeal to you. Please specify.

16. If so, what was the outcome of the legal action or personal appeal.

17. On what date or dates, if any, were these efforts performed by the prior possessor in order to obtain the funds in your hands.

18. Please give the names and addresses of any persons who could substantiate the sources of funds obtained without consideration listed in your answer to question 6 above.

19. Were you, on February 13, 1969, between 11:00 a.m. and 11:30 a.m. involved in any way whatsoever with the robbery of the Simoneau Branch Bank.

20. Have you ever owned any weapon or a smoke or tear-gas type bomb. If so, please specify make, kind, serial number and date and details of acquisition of same and disposition of same.

21. If purchased, please indicate the date of purchase and name and address of the seller of the weapon or bomb.

22. With regard to the weapon and the bomb, did you comply with all state and federal licensing acts in connection with said items.

23. Please state the names of your accomplices, their addresses and where they can presently be reached.

24. Please indicate what percentage of the funds stolen from the Simoneau

Branch Bank have been retained by them.

25. What are the present whereabouts of the funds returned by your accomplices in the February 13th robbery of the Simoneau Branch Bank.

26. Please state what acts were performed by your accomplices in the robbery.

27. If you did not actively participate in the February 13th robbery of the Simoneau Branch Bank, please indicate in what way you aided or abetted in the commission of the crime.

28. Please indicate whether or not you helped in the planning stage of the crime.

29. State on what date or dates you met with other participants to establish the timetable or plan of the robbery.

30. Please give the names of other participants in the robbery in this initial planning stage.

31. Did you visit the Simoneau Branch Bank before the date of the robbery.

32. Did you do so with the purpose of planning the robbery.

33. Did you make any notes as to the layout of the interior or activity about the bank in order to help formulate plans for the robbery on February 13th.

34. If you did not actively participate in the February 13th robbery of the Simoneau Branch Bank, please indicate in what way you aided or abetted in the commission of the crime after its completion.

35. Please state if you in any way helped in the concealment of the funds stolen from the Simoneau Branch Bank.

36. If so, please indicate the amount of the funds and from whom you received them.

37. Are these funds the same you now wish to claim as your own.

38. Did you at any time help conceal the identity or whereabouts of the actual participants in the robbery of the Simoneau Branch Bank.

39. Was your concealment pursuant to an agreement made with the participants prior to the commission of the crime.

40. When this concealment was performed, were you aware of the commission of the crime and the participants' involvement in said crime.

41. If you were not an active participant in the commission of the February 13th robbery of the Simoneau Branch Bank, and if you did not aid or abet in the commission of said crime before or after, then please state what you were doing on the date of the robbery.

42. Is there anyone who can substantiate your explanation of what you were doing on the date of the robbery.

43. Please state his name and address and the reason for his knowledge of your conduct.

44. Have you used any aliases during the last six years. If so, what were they and on what occasions were they used and for what purpose.

45. If there is more than one person involved in the circumstances of your explanation, please give their names and addresses.

46. Is there any documentary or physical evidence other than eyewitness testimony that can substantiate your explanation of where you were and what you were doing on February 13th.

47. If so, please indicate where it is located or, in the alternative, in whose custody it is now located.

48. Please state in what years, if any, in the past five years, you filed a Federal Income Tax Return.