16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellant,
v.
G. Thomas NEBEL, Defendant-Appellee.
 No. 93-5593.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1994.
 
 Before: MILBURN and BATCHELDER, Circuit Judges; and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 The United States appeals the suppression of defendant's deposition testimony taken by the government in a civil forfeiture proceeding and sought to be used by the government in a later perjury prosecution. The district court granted the motion to suppress on grounds that the defendant's Fifth and Sixth Amendment rights had been violated. We reverse.
 
 
 2
 * A. Facts
 
 
 3
 In 1988, Florida state prosecutors brought drug smuggling charges against one Russell Brothers, Jr. In preparation for trial, a state investigator and a state prosecutor met with a federal drug enforcement agent from the Drug Enforcement Agency's Nashville office. The DEA agent suggested that they contact G. Thomas Nebel, a Nashville attorney, because the agent thought that Nebel could provide information relevant to Brothers's prosecution. The state prosecutor contacted Nebel and promised him immunity in exchange for information regarding Brothers's money laundering activities. Nebel agreed and discussed the facts surrounding several corporations he had established and Brothers's role in those endeavors.[1]
 
 
 4
 Florida authorities sought forfeiture of the properties held by the corporations established by Nebel. When this effort seemed unlikely to succeed, the state authorities contacted the U.S. Attorney's office in Nashville in June of 1989 to see if the properties could be forfeited under federal law. Federal authorities, including the IRS, DEA, and U.S. Attorney's office, began investigating forfeiture of the properties. In August 1989, the DEA served an administrative subpoena on Nebel for the records of the various corporations Nebel had set up. Nebel provided these documents to an Assistant U.S. Attorney. In September 1989, the AUSA filed civil forfeiture complaints against much of the corporations' property. In October or November, the U.S. Attorney's office assembled an Organized Crime Drug Enforcement Task Force to investigate criminal activity surrounding the corporations and Brothers's dealings. Named among the fifteen "principal prospective defendants" was Nebel. In early 1990 as part of a federal grand jury's investigation of this matter, the grand jury issued subpoenas to several financial institutions for financial records of the corporations. On February 26, 1990, the AUSA issued a notice to depose Nebel. The notice and the subpoena referenced the civil forfeiture action and nothing else.
 
 
 5
 The deposition lasted for two days and was attended by Nebel, Nebel's attorney Willis, two attorneys for the claimants to the property subject to forfeiture, the AUSA, IRS agents Bolton and Avrit (both task force members), and Nashville Police Officer Camacho (a task force member). At the outset of the deposition, Nebel's attorney asked what the purpose of the deposition was. He asked for two reasons: (1) he had heard from counsel for some of the claimants that much of the civil forfeiture action had been settled so he wondered why Nebel's deposition was still necessary, and (2) he was curious as to why the IRS agents and the Nashville police officer were there. In response to Willis's direct question as to whether the deposition was a discovery deposition or an evidentiary deposition, the AUSA said it was for discovery not evidentiary purposes. No federal authority had told Nebel that he was under criminal investigation up to that point, and the AUSA did not inform Nebel at any time during the deposition that he was under criminal investigation.[2] At no point in his deposition did Nebel raise the issue of or invoke his Fifth Amendment right against self-incrimination; instead, he discussed all matters completely.
 
 
 6
 The U.S. Attorney's office continued its investigation of Brothers, Nebel, and others, and a year later, the IRS began a full criminal investigation of Nebel.
 
 B. Procedural History
 
 7
 In August 1992, a federal grand jury returned a nineteen count indictment charging Nebel and others with various money laundering crimes and charging Nebel with four counts of perjury arising out of his civil deposition. Nebel moved to suppress the deposition, alleging that the government had intentionally deceived him as to the nature of the deposition and by doing so violated his constitutional rights.[3] The district court severed the perjury counts, and after the government said it did not intend to use Nebel's deposition testimony for anything but the perjury counts, the district court considered Nebel's motion to suppress only as to the perjury counts. The court concluded that the government had abused the civil discovery process by using it as a tool for criminal investigation and granted the motion. The court wrote that the AUSA "withheld the true nature of the deposition, and in doing so violated Mr. Nebel's constitutional rights." Memorandum at 7 n. 6. The court then proceeded to trial on the remaining counts against Nebel and others. This appeal of the suppression order followed.
 
 II
 
 8
 The district court's decision to suppress Nebel's deposition testimony rested on two grounds: a Fifth Amendment due process violation and a violation of Nebel's privilege against self-incrimination.[4] First, the district court held that although federal law permits parallel civil and criminal proceedings (successive or simultaneous) and this occurrence is generally unobjectionable, an exception to this principle is " 'where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution.' " Memorandum at 8 (quoting United States v. Kordel, 397 U.S. 1, 11-12 (1970)) (emphasis added and footnote omitted by district court).[5] Second, the district court held that the government's deception violated Nebel's right against self-incrimination: " '[I]t is unrealistic to suppose that defendant will be on guard against incriminating himself when he is unaware that criminal proceedings are contemplated.... In such a situation, it is unfair in the extreme to penalize the defendant ... for failure to invoke his privilege against self-incrimination.' " Memorandum at 9 (quoting Rand, 308 F.Supp. at 1237) (omissions by district court).
 
 A. Right Against Self-Incrimination
 
 9
 We find that this case falls squarely between two lines of precedent. On the one hand, the Supreme Court in United States v. Kordel, 397 U.S. 1 (1970), held that a corporation's vice-president, who, without asserting his right against self-incrimination, answered the government's interrogatories in a civil proceeding to condemn some of the corporation's misbranded products, suffered no violation of his Fifth Amendment rights when his answers were used against him in a related criminal proceeding. The Court found that the government did not act in bad faith, id. at 6, that the vice-president could have invoked his Fifth Amendment rights, id. at 7, and that the vice-president's "failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself," id. at 10. The Court rejected the argument that the government was really after the vice-president himself and that the government therefore should have been required to dispense with the civil suit and pursue the criminal case alone.
 
 
 10
 It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.
 
 
 11
 Id. at 11. The Court was careful, though, to clarify what kind of case was before it.
 
 
 12
 We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.
 
 
 13
 Id. at 11-12 (emphasis added) (footnotes omitted).[6]
 
 
 14
 Besides Kordel, the government relies heavily on Minnesota v. Murphy, 465 U.S. 420 (1984), which held that the Fifth and Fourteenth Amendments were not violated when the defendant's truthful answers to his probation officer about another crime were used to convict him of that crime. The court held that even though the defendant was required by the terms of his probation to be truthful "in all matters," the defendant's statements were not "compelled" within the meaning of the Fifth Amendment; the privilege against self-incrimination is not self-executing, and the defendant's failure to assert the privilege waived his right to invoke it. Murphy is only as helpful as Kordel, because in Murphy there was neither bad faith nor deception on the part of the government.[7]
 
 
 15
 On the other hand (and as suggested by the Kordel Court), there are cases in which government trickery or deception will negate an otherwise valid waiver of the right against self-incrimination. For example, in United States v. Doss, 563 F.2d 265 (6th Cir.1977) (en banc), this court upheld the dismissal of an indictment where, having secretly indicted the defendant, the grand jury subpoenaed him to appear and testify without counsel and without telling him that he had been indicted. The AUSA then proceeded to ask questions related to his guilt on the charges for which he had been secretly indicted. This court found the procedure repugnant to the Fifth Amendment (both the Due Process Clause and the right against self-incrimination) and upheld the dismissal of the indictment.
 
 
 16
 This case falls between Kordel and Doss. The district court found that the AUSA deceived Nebel and his counsel as to the true purpose of the deposition, and this action amounts to a finding of bad faith, which the Kordel Court suggested might present a different case than was before it in Kordel. However, the AUSA's failure to inform Nebel at the time he was deposed that he was under investigation is not nearly as egregious as the government's conduct in Doss. But for purposes of this appeal, we believe it unnecessary to decide into which camp the instant case falls. As we discuss in part C infra, we can assume that this case falls into the Doss category and suppression is still not required.
 
 B. Due Process Claim
 
 17
 Nebel also argued and the district court found that the government's conduct was so offensive that due process demanded that the deposition testimony be suppressed. This argument overlaps the self-incrimination argument to a certain degree and is dealt with in both Doss and Kordel. In Doss the court found the government's inappropriate conduct a violation of due process and worthy of the harshest sanction--dismissal of the indictment. In Kordel, however, the Court found no bad faith and rejected the defendants' argument that the government's conduct "reflected such unfairness and want of consideration for justice as independently to require the reversal of their convictions." Kordel, 397 U.S. at 11.
 
 
 18
 Because suppression of Nebel's deposition testimony in his prosecution for perjury is not warranted as a remedy regardless of the existence of a due process violation, see discussion part C infra, we do not discuss this further.
 
 
 19
 C. Is Suppression an Available Remedy?
 
 
 20
 The government argues that even if it did violate Nebel's Fifth Amendment rights (whether due process or self-incrimination) by its alleged deception, suppression of Nebel's testimony is not an available remedy because the government was seeking to use the statements, not in a substantive criminal prosecution, but in a prosecution for perjury. The government contends that regardless of whether a party's Fifth Amendment rights are violated, he has only two options: testify truthfully or not at all. Nebel responds that even if the government's view is generally correct, this case presents the exception to the general rule, i.e., the government's conduct was so egregiously unfair that a prosecution for perjury would itself violate due process. Nebel's position, as summed up by his counsel at oral argument, is basically that the government's conduct here was so outrageous that the government should not be permitted to use the deposition testimony against Nebel for any purpose, even if that testimony was replete with blatant and intentional falsehoods.[8]
 
 
 21
 The Supreme Court dealt with a similar case in United States v. Mandujano, 425 U.S. 564 (1976) (plurality opinion). An undercover agent negotiated a heroin deal with Mandujano and testified to the facts surrounding this arrangement before a grand jury. The grand jury then called Mandujano to testify before it. The government's attorney told Mandujano that although he did not have to answer any questions that would incriminate him, he did have to speak truthfully and answer any nonincriminating questions. The government then asked direct questions of Mandujano about his recent heroin dealings, and Mandujano flatly denied being involved in any heroin deals. Instead of bringing drug charges against Mandujano, the government prosecuted him for perjury. But by pretrial motion Mandujano successfully moved to suppress his testimony on grounds that it was obtained in violation of Miranda. On appeal, the Fifth Circuit affirmed; the court noted that the government's actions smacked of entrapment and held that suppression was required in order to deter the government from bringing soon-to-be defendants before the grand jury for the purpose of obtaining either incriminating or perjurious testimony. The Supreme Court reversed. The Court rejected the Fifth Circuit's view, holding that "[Mandujano] was free at every stage to interpose his constitutional privilege against self-incrimination, but perjury was not a permissible option." Id. at 584.
 
 
 22
 There is little difference between Mandujano and the case at bar. Although it might be argued that the instant case presents more bad faith than did Mandujano--at least in Mandujano the government was forthright about what it was doing, telling Mandujano that he did not have to answer any incriminating questions before it openly and directly questioned him about his criminal activities--this does not change the outcome. This is a prosecution for perjury, not a prosecution for the underlying offenses of money laundering and conspiracy. We hold that because the government's deception in this case did not compel or cause Nebel's false testimony, or even affect in the slightest his decision whether to testify truthfully, his statements are admissible against him in the collateral prosecution for perjury.[9] ,[10]
 
 D. Exercise of Supervisory Powers
 
 23
 Finally, Nebel argues that regardless of whether the district court erred in suppressing the testimony on Fifth Amendment grounds, we can and should exercise our inherent supervisory powers to either affirm the suppression or dismiss the indictment altogether. We decline to do so, finding that this situation does not satisfy the requirements for such an exercise as set out in our case law. See United States v. Talbot, 825 F.2d 991, 998 & n. 5 (6th Cir.1987); United States v. Nembhard, 676 F.2d 193, 199-200 (6th Cir.1982), cert. denied, 464 U.S. 823 (1983).
 
 III
 
 24
 Despite the fact that Nebel's Fifth Amendment rights were violated by the government's deception, suppression of Nebel's deposition testimony was not an available remedy in Nebel's prosecution for perjury. Because the government's bad faith does not excuse Nebel's alleged perjury, the district court's suppression order is REVERSED.[11]
 
 
 25
 MILBURN, Circuit Judge, concurring.
 
 
 26
 I concur in the result reached by the majority. Although the following appears to be implicit in the majority opinion, I would explicitly hold that the district court was correct in concluding that prosecutorial misconduct excused Nebel from invoking his Fifth Amendment right against self-incrimination because the circumstances deprived him of a free choice to admit, deny, or refuse to answer. I would further explicitly hold that there is factual support in the record for the district court's findings of bad faith and abuse of process.
 
 
 27
 There can be no question but that Nebel was the target of a criminal investigation at the time of his deposition. He was listed as a principal prospective defendant in the task force application, and the fact that he was not numbered by the IRS or indicted until after his deposition was taken is irrelevant in light of the task force application and the testimony of the IRS agent. As to these matters, I would affirm the district court.
 
 
 28
 However, I agree with the majority that the violation of Nebel's Fifth Amendment privilege against self-incrimination and the district court's findings of bad faith and abuse of process do not serve as a basis for suppressing Nebel's deposition for purposes of a perjury prosecution. Perjury is a separate crime and has not been held to "be the substantive equivalent of self-incrimination." U.S. v. Babb, 807 F.2d 272 (1st Cir.1986) (cert. denied). The Fifth Amendment privilege bars compelled testimony as to past crimes, but it does not shelter new perjury. Accordingly, I agree with the majority that suppression of Nebel's deposition for purposes of the nonperjury substantive charges serves as sufficient punishment to the government, but suppressing the deposition for purposes of the perjury charges would only serve to reward Nebel for his alleged perjury, and as to this point, I agree with the majority and would reverse the district court.
 
 
 29
 COHN, District Judge, concurring.
 
 
 30
 As well as being part of the majority in the PER CURIAM opinion in this case, I concur with the views expressed by Judge Milburn.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 In the district court, Nebel alleged that the state authorities told him that the grant of immunity also extended to federal prosecution. The government responded by saying that it was never informed that Nebel had been immunized in Florida, much less that Florida's grant of immunity supposedly extended to federal prosecution as well. The government also argued that, in any event, the state authorities had no authority to grant federal immunity to Nebel, and thus Nebel had no immunity from federal prosecution. The district court held that the state's grant of immunity did not bind the federal government, and Nebel has not cross-appealed this issue
 
 
 [2]
 The AUSA later submitted an affidavit saying that a day or so before the deposition occurred, Nebel appeared at the U.S. Attorney's office unannounced and asked if he was going to be charged. The AUSA told him that "no one has been eliminated as a target" and refused to speak with him further because he was represented by counsel. The district court apparently disbelieved this testimony, finding it noteworthy that the AUSA had not mentioned this conversation when questioned by Nebel's attorney at the outset of Nebel's deposition. See District Court's Memorandum at 5 n. 4. We need not resolve this uncertainty, however, because in our view it does not affect the outcome of this case
 
 
 [3]
 Nebel's attorney said that had he discovered that Nebel was under criminal investigation at the time of the civil deposition, he would have immediately recessed the deposition, moved to quash the subpoena, and complained about the government's deception
 
 
 [4]
 The district court's Memorandum also found that the government's deception violated Nebel's Sixth Amendment right to the effective assistance of counsel, see Memorandum at 10-11, but the district court later acknowledged that although it still believed that the "spirit" of the Sixth Amendment had been violated, the Amendment actually had not been violated because the right to counsel had not yet attached, see Memorandum [on Nebel's motion to dismiss the indictment] at 2-3. We believe that the district court was correct in withdrawing its reliance on the Sixth Amendment as grounds for suppression, and we do not address this issue further
 
 
 [5]
 On this score, the district court also relied on two district court cases, United States v. Rand, 308 F.Supp. 1231, 1233 (N.D.Ohio 1970), and United States v. Parrott, 248 F.Supp. 196 (D.D.C.1965). We limit our analysis of this issue to the consideration of United States v. Kordel, 397 U.S. 1 (1970), because both Rand and Parrott predate Kordel and their vitality post-Kordel is somewhat questionable. In fact, Rand relied heavily on United States v. Detroit Vital Foods, 407 F.2d 570 (6th Cir.1969), which was reversed under the name United States v. Kordel
 
 
 [6]
 We note that the district court's use of the italicized portion (the court quoted the italicized portion in its Memorandum) was somewhat misleading, because all Kordel said about this type of situation was that it was not presented in Kordel, not that it was definitely a violation of the Fifth Amendment
 
 
 [7]
 See also SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1377 (D.C.Cir.) (holding that parallel investigations by the Securities and Exchange Commission (civil) and the Department of Justice (criminal) did not require quashing of subpoenas issued by the SEC on grounds that DOJ might then use the discovery materials in criminal proceedings; "we should not block parallel investigations by these agencies in the absence of 'special circumstances' in which the nature of the proceedings demonstrably prejudices substantial rights of the investigated party or of the government"), cert. denied, 449 U.S. 993 (1980)
 
 
 [8]
 Nebel does not concede that his statements were false, and on the contrary, steadfastly argues that not one of his statements was materially false. This is a determination for the factfinder, not for the court of appeals
 
 
 [9]
 We are careful to note that the instant case is distinguishable from Brown v. United States, 245 F.2d 549 (8th Cir.1957), in which a witness's grand jury testimony was suppressed in a perjury prosecution because the government called the witness before the grand jury with the specific and sole purpose of attempting to elicit perjurious testimony. In Brown, and in contrast to the case at bar, the perjury prosecution was not a collateral matter--it was itself the only matter at hand
 
 
 [10]
 The purpose of suppression is deterrence. In a case where the government improperly deceives a defendant and gains incriminating information thereby, suppression of that evidence will put the government on notice that any evidence obtained by deception is not available for use in a prosecution for the investigated crime and will tend to deter the government from deceiving future defendants about the nature of the investigation. Here, for example, since the government deceived Nebel as to the nature of the proceedings and its criminal investigation of Nebel for money laundering, suppression in a money laundering prosecution might be appropriate. But as to the issue in the instant case, the causal link between the government's deception and Nebel's perjury is far too weak to commend suppression as the appropriate solution. Note that in Brown, see supra note 9, where the causal link is stronger, suppression is the appropriate remedy
 
 
 [11]
 Again, because the government told the district court that it did not intend to use Nebel's deposition testimony in the trial on the money laundering charges against Nebel and because of this the district court did not consider the motion to suppress as to those counts, our opinion is necessarily limited to whether suppression of the deposition testimony was appropriate as to the perjury counts