## WALDER *v.* UNITED STATES.

No. 121. Argued November 30, 1953.—Decided February 1, 1954.

*Paul A. Porter,* acting under appointment by the Court, argued the cause and filed a brief for petitioner.

*Robert S. Erdahl* argued the cause for the United States. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Olney* and *Edward S. Szukelewicz.*

Mr. Justice Frankfurter delivered the opinion of the Court.

In May 1950, petitioner was indicted in the United States District Court for the Western District of Missouri for purchasing and possessing one grain of heroin. Claiming that the heroin capsule had been obtained through an unlawful search and seizure, petitioner moved

to suppress it. The motion was granted, and shortly thereafter, on the Government's motion, the case against petitioner was dismissed.

In January of 1952, petitioner was again indicted, this time for four other illicit transactions in narcotics. The Government's case consisted principally of the testimony of two drug addicts who claimed to have procured the illicit stuff from petitioner under the direction of federal agents. The only witness for the defense was the defendant himself, petitioner here. He denied any narcotics dealings with the two Government informers and attributed the testimony against him to personal hostility.

Early on his direct examination petitioner testified as follows:

> "Q. Now, first, Mr. Walder, before we go further in your testimony, I want to you [sic] tell the Court and jury whether, not referring to these informers in this case, but whether you have ever sold any narcotics to anyone.
>
> "A. I have never sold any narcotics to anyone in my life.
>
> "Q. Have you ever had any narcotics in your possession, other than what may have been given to you by a physician for an ailment?
>
> "A. No.
>
> "Q. Now, I will ask you one more thing. Have you ever handed or given any narcotics to anyone as a gift or in any other manner without the receipt of any money or any other compensation?
>
> "A. I have not.
>
> "Q. Have you ever even acted as, say, have you acted as a conduit for the purpose of handling what you knew to be a narcotic from one person to another?
>
> "A. No, sir."

On cross-examination, in response to a question by Government counsel making reference to this direct testimony, petitioner reiterated his assertion that he had never purchased, sold or possessed any narcotics. Over the defendant's objection, the Government then questioned him about the heroin capsule unlawfully seized from his home in his presence back in February 1950. The defendant stoutly denied that any narcotics were taken from him at that time.[1] The Government then put on the stand one of the officers who had participated in the unlawful search and seizure and also the chemist who had analyzed the heroin capsule there seized. The trial judge admitted this evidence, but carefully charged the jury that it was not to be used to determine whether the defendant had committed the crimes here charged, but solely for the purpose of impeaching the defendant's credibility. The defendant was convicted, and the Court of Appeals for the Eighth Circuit affirmed, one judge dissenting. 201 F. 2d 715. The question which divided that court, and the sole issue here, is whether the defendant's assertion on direct examination that he had never possessed any narcotics opened the door, solely for the purpose of attacking the defendant's credibility, to evidence of the heroin unlawfully seized in connection with the earlier proceeding. Because this question presents a novel aspect of the scope of the doctrine of *Weeks* v. *United States,* 232 U. S. 383, we granted certiorari. 345 U. S. 992.

The Government cannot violate the Fourth Amendment [2]—in the only way in which the Government can do anything, namely through its agents—and use the fruits

---

[1] This denial squarely contradicted the affidavit filed by the defendant in the earlier proceeding, in connection with his motion under Rule 41 (e) to suppress the evidence unlawfully seized.

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

of such unlawful conduct to secure a conviction. *Weeks* v. *United States, supra.* Nor can the Government make indirect use of such evidence for its case, *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, or support a conviction on evidence obtained through leads from the unlawfully obtained evidence, cf. *Nardone* v. *United States,* 308 U. S. 338. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men.

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* doctrine would be a perversion of the Fourth Amendment.

Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.[3]

---

[3] Cf. *Michelson* v. *United States,* 335 U. S. 469, 479: "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his

The situation here involved is to be sharply contrasted with that presented by *Agnello* v. *United States,* 269 U. S. 20. There the Government, after having failed in its efforts to introduce the tainted evidence in its case in chief, tried to smuggle it in on cross-examination by asking the accused the broad question "Did you ever see narcotics before?"[4] After eliciting the expected denial, it sought to introduce evidence of narcotics located in the defendant's home by means of an unlawful search and seizure, in order to discredit the defendant. In holding that the Government could no more work in this evidence on cross-examination than it could in its case in chief, the Court foreshadowed, perhaps unwittingly, the result we reach today:

> "And the contention that the evidence of the search and seizure was admissible in rebuttal is without merit. In his direct examination, Agnello was not asked and did not testify concerning the can of cocaine. In cross-examination, in answer to a question permitted over his objection, he said he had never seen it. He did nothing to waive his constitutional protection or to justify cross-examination in respect of the evidence claimed to have been obtained by the search. . . ." 269 U. S., at 35.

The judgment is

*Affirmed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent.

---

benefit and to make himself vulnerable where the law otherwise shields him."

The underlying rationale of the *Michelson* case also disposes of the evidentiary question raised by petitioner, to wit, "whether defendant's actual guilt under a former indictment which was dismissed may be proved by extrinsic evidence introduced to impeach him in a prosecution for a subsequent offense."

[4] Transcript of Record, p. 476, *Agnello* v. *United States,* 269 U. S. 20.