THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ELEUTERIO HERNÁNDEZ PÉREZ, Defendant and Appellant.

No. CR-64-437.     Decided February 17, 1966.

*Edna Abruña Rodríguez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant Eleuterio Hernández Pérez was accused of having killed a human being by firing several shots with a revolver inflicting a wound on him which resulted in the victim's death; that he committed this act illegally, voluntarily, with malice aforethought, and deliberate and premeditated intent to kill. He was also accused of having in his possession and control and bearing a weapon without having a license therefor—violation of §§ 6 and 8 of the Weapons Law. He was convicted of voluntary manslaughter, and having accepted the allegation of subsequent offense, he was found guilty of said offense in a subsequent degree, as well as of violation of §§ 6 and 8 of the Weapons Law. By virtue thereof he was ordered to serve an indeterminate sentence of 15 to 30 years in the penitentiary for subsequent voluntary manslaughter, 2 to 4 years in the penitentiary for violation of § 8 of the Weapons Law and one year in jail for violation of § 6 of said law.

On appeal he charges the trial court with having committed five errors, which were not committed as we shall show below:

1. "The trial court erred in not permitting the impeachment of witness Providencia Carrera Ruiz by adducing evidence of behavior contrary to that alleged by her and consisting in several cases of breach of the peace for which she had been sentenced, permitting it only in such cases in which witness had pleaded guilty."

Witness for the prosecution, Providencia Carrera Ruiz, the victim's wife, testified on cross-examination that she never had an argument with appellant; that she never offended him by word of mouth; that she never disturbed the peace; that she never argues with anyone; that she does not like to argue. The court did not permit the defense to

ask her whether she ever disturbs the peace and whether she had ever been fined for breach of the peace; but the trial court added that these questions would be permissible if there is evidence that she has pleaded guilty. Evidence was admitted in the sense that six years ago the witness had pleaded guilty of breach of the peace and that in another case in which she was charged with the same offense, she testified that she thought she had not pleaded guilty.

█ Pursuant to § 158 of the Law of Evidence (32 L.P.R.A. § 2150), a witness may be impeached by the adverse party by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad; but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony.[1] We have consistently held that a witness may not be impeached by evidence as to prosecutions pending against him, arrest, accusations or complaints, but he may be impeached on evidence of prior convictions of felony. People v. Rosario Cancel, 90 P.R.R. 163 (1964); People v. González, 80 P.R.R. 203 (1958); People v. Rodríguez, 62 P.R.R. 749 (1944); People v. Vélez, 51 P.R.R. 644 (1937); People v. Belardo, 50 P.R.R. 491 (1936). However, in case of a defendant who, on direct examination has adduced evidence of his good character, and for that purpose he "opens the door to his past," proof of other offenses, whether felonies or misdemeanor, or that he has been previously arrested, is admissible as evidence of rebuttal or is within the realm of legitimate cross-examination. On the other hand, if a defendant "does not choose in his direct examination to enter upon matters relating to his previous history the prosecu-

---

[1] Rule No. 131 of the Rules of Criminal Procedure provides that the admissibility of the evidence and the competency and privileges of the witnesses shall be governed by the provisions of the Law of Evidence of Puerto Rico unless otherwise provided by the law and by said Rules.

tion cannot commence any inquiry in regard thereto except as to the single case of a previous conviction of a felony . . ." *People* v. *Archeval,* 74 P.R.R. 478, 483 (1953). *People* v. *Iturrino de Jesús,* 90 P.R.R. 687 (1964). *Cf. Walder* v. *United States,* 347 U.S. 62 (1954).

■ ■ Therefore, it was not proper to ask witness on cross-examination whether she ever disturbed the peace or whether she had ever paid a fine therefor. As it was a case of misdemeanor the evidence was not admissible and neither was the evidence in relation to the conviction of an offense of such classification. Therefore, the trial court did not err in refusing to permit the impeachment of a witness for the prosecution as stated. The error committed in admitting evidence in the sense that the witness had been convicted of breach of the peace favored appellant rather than injured him.[2]

2. "The trial court erred in refusing to instruct the jury in the sense that if defendant had used the weapon only in his residence he had not violated § 8 of the Weapons Law."

■ From the testimony of the witnesses for the prosecution it appears that appellant arrived from the street, entered through the gate of the house where the crime occurred; that the victim was sitting in a rocking chair on the porch of said house where he lived; that upon seeing appellant approaching he got up; that appellant bent down on approaching him and fired three shots at him with a blackhandle revolver which he then threw into the San José Lagoon. Previously, he had threatened the victim's wife with

---

[2] On this theme see:

*"Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution"*, 20 A.L.R.2d 1421; *Evidence: "Impeaching witness by showing specific wrongful acts"*, 11 Hastings L.J. 74; *"Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution"*, later case service, 19–31 A.L.R.2d 311; 3 Wharton, Criminal Evidence, §§ 871, 927; M'Cormick, Evidence, "Impeachment, Character", ch. 5, p. 93 *et seq.*; 3 Wigmore, §§ 890, 925, 980, 980a.

a similar revolver. A witness testified that he saw appellant, on leaving his house, put in his pocket "something like a blackhandle weapon"; that Provi (the victim's wife) screamed and said: "Look at him threatening me with a good-for-nothing revolver." It was not proved that he had a license to carry weapons. Therefore, the only logical inference derived from the evidence in question is that appellant was carrying the revolver on the public thoroughfare in coming toward the house, passing the gate, approaching the porch thereof and firing. *People v. García Félix*, 90 P.R.R. 153 (1964); *People v. Martínez Maldonado*, judgment of December 5, 1963; *People v. Rivera*, 83 P.R.R. 452 (1961); *People v. Rosario*, 80 P.R.R. 306 (1958); *People v. Santiago*, 80 P.R.R. 298 (1958); *People v. Rivera*, 75 P.R.R. 399 (1953). Therefore, we conclude that the error in question was not committed.

3. "The trial court erred in failing to protect witness for the prosecution Ángel Luis Martínez against the relentless and persistent examination of the prosecuting attorney who harassed him without giving him time to think and explain his answers."

This error is grounded on the following part of the cross-examination of the only witness for the defense: (Tr. Ev. pp. 166–167)

"Q. Why do you enter through the window?

A. As I live near the edge of the road, I can go in by any way.

Q. Why do you like to enter through the windows? You are not accustomed to entering houses through the windows?"

Later the prosecuting attorney asked: (Tr. Ev. p. 179)

"Q. You said: 'I saw, I looked through the window.' Then you said that you were outside of the house, leaning against the window. Or is it a fact that you were not around that place and you do not know where to place yourself?

A. I was there.

PROSECUTING ATTORNEY: We had agreed this morning . . . I see through the mirage of inexpertness, that his transaction of the shots has a ring to it . . . for about five minutes he did not stand up from where he was to go and see, whether he could see well from there. He did not want the shots, the scene of helping his friend of ten years.

MR. VELASCO: That is a remark, that about the little scene of a soap opera; let us speak properly.

PROSECUTING ATTORNEY: Whether he wanted to be peeping or to help his friend of ten years.

JUDGE: Permitted.

PROSECUTING ATTORNEY: I was looking; I was not supposed to kill him there.

JUDGE: Did he do it or not?

A. No. Why? Because he had no reason to go there. How was the chain 1″ diameter . . . I see him that far, in the darkness of the night, perched on a window, there was a light. In which hand was he holding the chain to lash him with it? In the right hand. Where did he hit him first? On the face. And the second? On the face. And the third? On the face. And the fourth? I know no more, then he stopped. You said that night you could not stop, but continued throwing everything at his face, all the blows were on his face.

MR. VELASCO: Leave out the remarks.

JUDGE: What is the objection?

MR. VELASCO: Each question brings a remark. The duty of the prosecuting attorney is to ask questions and receive answers."

■ It is argued that the remarks in question lessened the value of the witness' testimony who, in view of the prosecuting attorney's hostility, became timid and suspicious of being put to the ridicule to which he was being subjected; that such remarks impaired the function of the prosecuting attorney in the elucidation of the truth and the magistrate should have seen that this function be complied with. In view of the fact that the witness testified that he could not read or write, or "distinguish one day from another" and

that his testimony was vague and sometimes inaccurate, it is not unusual that the prosecuting attorney conducted his cross-examination in the manner he did. The record does not show that the prosecuting attorney harassed the witness or failed to give him time to think and explain his answers. Furthermore, it is apparent that the cross-examination in question did not impair his testimony before the jury in the sense that defendant, in firing against his victim, was defending himself from the victim's assault with a piece of chain, since defendant was charged with murder in the first degree and the jury rendered a verdict of voluntary manslaughter. Therefore the error in question was not committed.

4. "The trial court erred in ordering the marshal, before the jury, to take charge of the witness for the defense under strict orders to keep said witness from communicating with defendant's attorney, which expressions and attitude of the court constituted a comment on the weight of the evidence, that is, the credibility which said witness deserved to the jury."

The incident to which this assignment of error refers is the following: (Tr. Ev. pp. 182–183)

"JUDGE CARREIRA:
   Let us adjourn until 2:00 p.m.
   Q. You cannot speak to anybody, either your attorney, or witnessess or the defendant. Understood? Under penalty of contempt. You are under the Rules of the Court.
PROSECUTING ATTORNEY ORTIZ JUAN:
   I would not only like that that warning be made but also that the marshal stay with him and take him to lunch. He is testifying.
JUDGE CARREIRA:
   Marshal, take charge of him. Take him to lunch. . . ."

The defense alleges that "this incident, which in another situation would lack merit, acquires great importance in the face of the facts of the case since this is the same witness that the prosecuting attorney has harassed and has

brought doubt to his testimony by his remarks and now he forbids that he be separated from the marshal implying that he is not a reliable person."

■ This assignment of error lacks merit. It is not apparent that the remarks in question caused any prejudice to appellant or that they deprived him of a fair trial. *People* v. *Andrades*, 83 P.R.R. 818, 828 (1961); *People* v. *Matos*, 81 P.R.R. 496, 503 (1959); *People* v. *Díaz*, 74 P.R.R. 348, 366–67 (1953).

5. "The trial court erred in permitting the prosecuting attorney to qualify the testimony waived by him as corroborative of the other testimony presented by the People."

■ This assignment is grounded on the fact that when the prosecuting attorney finished presenting his evidence he announced to the court that he waived the other witnesses for the prosecution whose names appeared indorsed on the informations, since he deemed their testimonies were "cumulative or corroborative evidence". This is a very different situation to that in *People* v. *Orona Merced*, 89 P.R.R. 329 (1963), for in the latter the prosecuting attorney said, in his final report to the jury, referring by their names to certain witnesses who had testified; that their testimony in particular had been "corroborated by the evidence which we did not present and offered as evidence of a cumulative nature." We held that the trial court erred in supporting this action of the prosecuting attorney in *Orona Merced, supra*, since it was improper to inform the jury that the testimony of certain witnesses was corroborated by those of others who did not testify; there was no justification whatsoever to allude to evidence which was not introduced. On the contrary, in the case at bar, when offering the evidence for the prosecution, the prosecuting attorney informed that: (Tr. Ev. pp. 132–133)

"There is no more evidence. On the *back of the information* there appear other witnesses whose testimonies would be cumulative or corroborative. They are present in the courtroom and we place them at the disposal of the defense. With leave of the court, I shall name them . . . ." (Italics ours.)

The judge alluded to this point once more and said: (Tr. Ev. p. 133)

"On the back of the information there are some witnesses who have not appeared and who have not been used by the prosecuting attorney."

The prosecuting attorney answered to this: (Tr. Ev. p. 133)

"I announce it is cumulative and corroborative evidence, or *hearsay evidence,* and we place it at the disposal of the defense. That is our case." (Italics ours.)

The counsel for the defense did not object to the prosecuting attorney's statements. No incident arose as to this point. This reference as to corroborative evidence was made in offering the evidence for the prosecution, and that reference was made to witnesses whose names were *endorsed on the information,* and furthermore, the prosecuting attorney made no more remarks on that particular.

■ Although the prosecuting attorneys should not use the word "corroborate"[3] in relation to the evidence not offered, under the particular circumstances of this case the announcement of the prosecuting attorney in the manner he made it could only result in failing to create the presumption against him established by the Law of Evidence to the effect "that evidence wilfully suppressed would be adverse if produced." 32 L.P.R.A. § 1887, subdivision 5. *People* v. *Flores Berty,* 92 P.R.R. 562 (1965).

---

[3] Pursuant to the Law of Evidence, § 16 (32 L.P.R.A. § 1636), cumulative evidence is "additional evidence of the *same character* to the same point." Corroborative evidence is "additional evidence of a *different character* tending to the same point as the one to which it is added." (32 L.P.R.A. § 1637.) (Italics ours.)

For the reasons ·stated the judgments· rendered in this case by the Superior Court, San Juan Part, on December 17, 1963, will be affirmed.