Chief Judge Fuld
(dissenting). The defendant’s conviction should be reversed since it was based upon inculpatory statements stemming from evidence concededly illegally obtained.
On September 20, 1963, two policemen went to a hotel in response to a telephone call from a cleric that she had just seen a man who had previously attempted to rob her. The defendant was in the lobby of the hotel and, although the clerk at first indicated that it was he who had attempted to hold her up, she later acknowledged that she was not sure. The matter was not pursued further and nothing came of the charge. In the course of their investigation, however, the police officers discovered an unidentified man in the hotel washroom and found a check made out to the order of cash on the window sill of the washroom. This check, it developed, was one of a number which earlier in the day had been stolen, along with cash, from the office of Montaulc Freightways by a man dressed in clerical garb. Both the defendant and the unidentified man (not connected with the defendant in any way) were taken by the police to the station house for further investigation.
Upon arrival at the station house, the police searched the defendant and found a set of keys for an automobile. They located the defendant’s car which had been parked near the hotel and opened the trunk and examined its contents. This search, effected without a warrant and concededly unlawful, yielded a valise containing clerical garb and a card identifying the defendant as a member of the ministry.[1] Armed with such *523 illegally seized articles, the police proceeded to confront the defendant with them and succeeded in procuring from him inculpatory statements, culminating in an admission that he had stolen the check (found in the washroom) from Montauk Freightways.
It is true, as noted in the court’s opinion, that the check was not itself illegally obtained but the fact is that the defendant was connected with, and implicated in, the theft solely by his confession which was procured from him through use of the illegally seized items. This appears, indisputably, from the minutes of the hearing on the motion to suppress the evidence. Thus, the policeman who had questioned the defendant, testified that he questioned him about the minister’s collar which had been illegally removed from the auto; this is the testimony:
“ Q. Did you discuss with him the minister’s collar that was in the valise ?
“ A. Yes, sir.
“ Q. At that time !
“ A. Yes, sir.
“ Q. What did you say to him about that!
“ A. I asked him if he had worn that collar that day.
He told me he did. I asked him if he had been to the Montauk Freightways to solicit money. He stated he was there. I asked him if he had taken a bag containing money from a cabinet or a chest in the office. He told me he did. ’ ’
Then, in answer to the questions — quoted in the court’s opinion (p. 521) —whether he had the “ washroom ” check and whether he had shown it to the defendant “ as [he] interrogated him ” in the station house, the officer stated that he had and that the defendant admitted that he had stolen the check from Freightways.
Upon the trial, the officer testified, over objection, to the statements made by the defendant concerning both the check and the items unlawfully obtained. This was egregious error. If anything is settled, it is that the exclusionary rule announced by the Supreme Court in Mapp v. Ohio (367 U. S. 643) proscribes the use not only of items illegally seized but also of evidence which stems from their use. (See, e.g., People v. Rodriguez, 11 N Y 2d 279, 286; Silverthorne Lbr. Co. v. United States, 251 *524 U. S. 385, 392; Wong Sun v. United States, 371 U. S. 471, 485.) Our holding in the Rodriguez case is particularly pertinent (11 N Y 2d, at p. 286):
“ [T]he rule announced in Mapp v. Ohio (367 U. S. 643) renders inadmissible not only the items [illegally]/ obtained, but any evidence which stems from, their use. As the Supreme Court put it, ‘ The essence .of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not.be used at all. * * * If knowledge of [facts] is gained from an independent source they may be. proved like any others, but the knowledge gained by the Goverment’s. own wrong cannot be used by it in the way proposed. ’ • (Silverthorne Lbr. Co. v. United States, 251. U. S. 385, 392; [other cases cited].) In short,- the exclusionary rule covers not only the evidence illegally obtained, but the product of the unlawful search as well. ' The underlying rationale is that government may not violate the constitutional guarantee (U. S. Const., 4th-Arndt.) and ‘ use the fruits of such unlawful conduct to secure a conviction. ’ (Walder v. United States, 347 U. S. 62, 64-65, supra.) And, obviously, it matters -not that these ‘ fruits ’ happen to be confessions' rather than some other type of evidence. (Cf. Costello v. United States, 365 U. S. 265, 278-280, supra.) ”
In the case before us, the defendant’s incriminating statements stemmed directly from the use of the •' illegally seized articles, and, accordingly, his admission should not have been received and used as evidence against him.
The judgment of conviction should be reversed and. a new trial ordered.
Judges Burke, Scileppi, Bergan and Keating concur with Judge Van Voorhis; Chief Judge Fuld dissents and votes to reverse and order a new trial in an opinion in which Judge Breitel concurs.
Judgment modified in accordance with the opinion herein and, as so modified, affirmed, and matter remitted to the Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.

.1 note that the court, following a motion to suppress the use of these items as evidence (Code Crim. Pro., § 813-e), held that the property had been illegally seized.