STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES N. SAN VITO, DEFENDANT-PETITIONER, AND PATRICIA E. SAN VITO, DEFENDANT-PETITIONER.

Superior Court of New Jersey
Law Division

Decided June 5, 1974.

Mr. *Leo J. Gellene* for petitioners (Messrs. *Merrey and Merrey,* attorneys).

Mr. *Craig D. Katz,* Assistant Prosecutor, for respondent (Mr. *Joseph C. Woodcock, Jr.,* Prosecutor of Bergen County, attorney).

GALDA, J. S. C. James N. San Vito and his sister Patricia petition for the expungement of their arrest records, pursuant to *N. J. S. A.* 2A:85–15 *et seq.* (*L.* 1973, c. 191). The exceptional circumstances of this matter dictate an interpretation of this new statute.

The facts are not in dispute and relatively simple. Petitioners were arrested on November 24, 1970 in Montvale, Bergen County, on a charge of possession of a controlled dangerous substance, in violation of the then existing law, *N. J. S. A.* 24:18–4. Additionally, James was charged under *N. J. S. A.* 24:18–37 with maintaining a narcotics nuisance.

A probable cause hearing held in the Montvale Municipal Court resulted in the case being referred to the Bergen County grand jury, which subsequently found "no bill."

Upon the filing of the expungement petition I issued an order for a hearing on April 26, 1974. As required by the statute, *N. J. S. A.* 2A:85–16, petitioners served notice of the hearing upon the Montvale Chief of Police, the Bergen County Prosecutor and the Attorney General. In response to that notice the Attorney General's office sent me the following letter:

The Attorney General's Office will consent to an order of expunge-
ment in the above-captioned matter if the petitioner stipulates therein
that he will never institute civil proceedings against law enforcement
officers involved in this case.

If such a representation cannot be made, we will object to the en-
trance of an order of expungement in which case only the sealing
remedy would be available. See P. L. 1973, Chapter 191, Paragraph
4(a).

The State maintained this position at the scheduled hear-
ing; petitioners' attorney strongly opposed it. He candidly
stated that although his clients never contemplated suing
the State, he could not, in good conscience, consent to such
a provision in the expungement order. Subsection 3(a) of
the statute (*N. J. S. A.* 2A:85–17(a)) provides:

At the time appointed for the hearing, if there is no objection
from those law enforcement agencies notified of the hearing, and no
reason appears to the contrary, the court may grant an order direct-
ing the clerk of the court and the parties upon whom notice was
served to expunge from their records all evidence of said arrest in-
cluding evidence of detention related thereto, and specifying those
records to be expunged.

Subsection 4(a) — *N. J. S. A.* 2A:85–18(a) — goes on
to say:

If an objection is made by any law enforcement agency upon which
notice was served, the court shall determine whether there are grounds
for denial. If the court determines there are no grounds for denial
it may grant an order directing the clerk of the court and the parties
upon whom notice was served to seal their records of said arrest, in-
cluding evidence of detention related thereto, and specifying those
records to be sealed.

Section 5 (*N. J. S. A.* 2A:85–19) directs that no court
shall grant an expungement order or seal the records of arrest
where "ground for denial" exists. "Grounds for denial" are
said to exist—

a. When the usefulness of the information of the arrest and the
proceedings to law enforcement authorities and to anyone who might
obtain such information outweighs the desirability of having a per-

son, who has been acquitted or against whom charges have been dismissed or discharged, freed from any disabilities attached to the arrest which preceded that acquittal, dismissal or discharge.

b. When dismissal resulted from a plea bargaining agreement or when acquittal, discharge or dismissal occurred after exclusion of highly probative evidence upon invocation of an exclusionary rule not directed to the truth of the evidence excluded. [Section 6; *N. J. S. A.* 2A:85-20]

Based upon the Attorney General's letter and the position taken by the prosecutor's office at the hearing, I am satisfied that no "grounds for denial" are present in this matter. Therefore, the only question open, and indeed the crux of this matter, is which of the two statutory remedies, expungement or sealing, is the proper relief to be granted?

There is a significant difference in the statutory scheme between expungement and sealing. In the case of expungement, once an order is issued the records of the arrest and the evidence relating thereto must be sequestered from the agency's regular files and delivered to a designated custodian of expunged records. The records or the information contained therein may never again be released. *N. J. S. A.* 2A:85-17(b).

The case is otherwise where there is a sealing. The records and information pertaining to the arrest are not sequestered. They may be maintained and used within the agency or agencies possessing them. The statute provides that "sufficient precautions" be taken to insure that the records and information are not revealed to anyone outside the law enforcement agency possessing them. *N. J. S. A.* 2A:85-18(b).

Finally, while both procedures mandate that the agency in possession of any such record must deny its existence where there is a request therefor, a court may, upon motion and for good cause shown, allow inspection of the previously sealed records. *Id.* Such is not the case where there is an expungement order. Expungement, therefore, is clearly the superior remedy from a petitioner's point of view.

The State's argument is twofold. Primarily it contends that the statute, and more specifically subsections 3(a) and 4(a) quoted above, should be given literal interpretation: that is to say, if *any* law enforcement authority involved in the particular case were to interpose *any* objection for *any reason whatsoever,* the court could consider only the sealing remedy. In short, the State maintains here that it may object to, and thereby preclude, the expungement remedy for a reason wholly irrelevant and immaterial to the record-keeping necessities of the law enforcement agencies.

As a corollary to this assertion, the State contends that if it is denied the power to exact the release from civil suit it seeks in exchange for not objecting to expungement, a situation could arise where a party could seek expungement of an arrest record, obtain it and then proceed to sue the State and/or its agents in a civil action such as false imprisonment. The State, once stripped of the expunged records, would be hard put to defend such a suit.

Petitioners oppose the State's position on three grounds: (1) it would violate public policy to permit the State to coerce them into agreeing to a release from civil suit in return for expungement of their arrest record; (2) the validity of such a release is highly questionable in light of the elements of "overreaching" and "unconscionability" they assert are present in the State's position; and finally (and to my mind most importantly), (3) what the State contends for is inconsistent with the legislative intent in enacting the statute in question.

I conclude that petitioners' position is correct; they are entitled to an order of expungement free of any release, stipulation, proviso or waiver.

While there may be merit in petitioners' argument that the validity of a waiver such as the State seeks is doubtful in light of the relative bargaining powers of the parties (see *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358 (1958), and *Shell Oil Co. v. Marinello,* 63 *N. J.* 402 (1973)), my decision is based on what I find to be the intent of the

Legislature. I therefore find it unnecessary to deal with the "unconscionability" argument.

For a court to agree with the State's construction of the statute would be equivalent to granting law enforcement agencies *carte blanche* as to the price they could exact from parties otherwise qualified to obtain an order of expungement by the very terms of the statute. I do not mean to imply that the State is acting in bad faith in this matter, but once such absolute power were granted a law enforcement agency, would it not amount to usurping the reviewing function of the courts under the statutory scheme? Further, and perhaps more seriously, if law enforcement agencies are not limited to making only relevant and material objections to orders of expungement, would this not be condoning the potential for arbitrary, if not capricious, actions on their part?

The court is asked to put its stamp of approval on a waiver by petitioners of their right to bring a civil action. This is the price the State puts upon *this* order of expungement. What prices might it seek to exact in the future?

I am mindful of the fact that the Legislature did not expressly use the phrase "material objection" in the wording of sections 3(a) and 4(a) of the statute. This, in and of itself, is not fatal to the position of petitioners, for it is axiomatic that the legislative intent, and the purpose for which the statute was enacted, are the polestars to which a court must look when called upon to interpret that statute.

In light of the final paragraph of the "Committee Statement" accompanying *Assembly Bill* 227 which became *L.* 1973, *c.* 191 (*N. J. S. A.* 2A:85–15 *et seq.*), I am strongly led to believe that the Legislature intended that any objection brought by law enforcement agencies must be material to the necessities of law enforcement. That paragraph reads, in part:

* * * The court can then direct the clerk of the court and parties who received notice of the hearing to expunge all evidence of the arrest and detention if there is no *material* objection or reason to do

otherwise. The petitioner would then be relieved from any disabilities which might have resulted from the arrest and the arrest will then be deemed not to have occurred. [Emphasis supplied]

I have also been influenced by the message sent by former governor William T. Cahill to the General Assembly on March 2, 1973 in connection with that legislation. The purpose of the message was to urge reconsideration and amendment of the expungement legislation that had been submitted for the Governor's approval. Governor Cahill said:

An expungement provision creates immediate conflict with the need of law enforcement authorities to maintain records necessary to fulfill their functions in the prevention and detection of crime. At issue are the tools law enforcement agencies need to exercise their powers of investigation. As Chief Justice Weintraub stated concerning the scope of record-keeping by law enforcement authorities in *Anderson v. Sills*, 56 *N. J.* [210] 220, 229 (1970), "The basic approach must be that the Executive Branch may gather whatever information it reasonably believes to be necessary to enable it to perform the police roles, detectional and preventative." The approach to retaining records must be equally as broad.

There may be instances where the police have no reason to retain an arrest record, as when the arrest was an admitted mistake. In such a situation it may be appropriate to expunge the arrest record. However, if the police legitimately believe that the record is necessary for law enforcement purposes, expungement would be inappropriate.

The primary objective of any expungement statute is to insulate the person from any disabilities or adverse effects resulting from the information sought to be expunged. * * *

The Legislature, acting upon the recommendations of the Governor, rewrote the statute. The statute in its present form includes the amendments so suggested.

Clearly, then, it is to this remedial end that the expungement statute is directed. No one disputes that the police have a right to maintain records on those persons who, in the legitimate opinion of law enforcement officials, represent a potential threat to the law and order of this State. But where, as here, expungement of arrest records of innocent people is objected to on a basis admittedly unrelated to ef-

fective law enforcement, the purpose of the statute is subverted. This court will not be a party to such an arrangement.

Since the State's objection to the order of expungement is not relevant or material to any legitimate law enforcement need, the order of expungement will be granted.

A word as to the State's argument with respect to the potential of civil suits in the present context.

To repeat, the State expresses concern that it would be hampered in defending such suits by the expungement of arrest records. But the fact that the records of arrest are expunged does not mean that the State, in defending such a suit, could not prove, by the best available evidence, the facts and circumstances of the arrest. See *Evid. R.* 70. Courts have not been without solutions to extraordinary situations in circumstances when the quest for truth runs headlong into a given prohibition against the admissibility of certain evidence or information. *Walder v. United States,* 347 *U. S.* 62, 74 S. Ct. 354, 98 *L. Ed.* 503 (1954) (suppression of evidence in a prior, unrelated prosecution is not a license to commit perjury in present litigation).

Petition for expungement granted.