STATE OF HAWAII, Plaintiff-Appellee *v.* RONALD MERLE GOMES, Defendant-Appellant

NO. 6048

SEPTEMBER 14, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

*Per Curiam.* Appellant appeals from a conviction of two counts of kidnapping. The only question presented by the appeal relates to cross-examination of appellant with respect to the presence in his house of a pistol, which had been suppressed as evidence by the trial court on a finding that it had been unlawfully seized. The cross-examination was permitted by the trial court following appellant's testimony on direct examination that there had been no pistol in the house and that the police had found none in their search of the house. We affirm.

All of the circumstances of the incident which resulted in the charges need not be recounted. The indictment charged that appellant had intentionally restrained a neighbor and her child, with intent to terrorize them. There was testimony that appellant, in his home, while carrying a pistol in his hand ordered the two victims to sit on the floor and threatened to kill them, and that he placed the pistol against the forehead of the neighbor. Appellant testified on direct examination by his

counsel that he did not have a gun in his hand when he was with the victims and that there were no pistols in the house. In response to a question whether he knew of any reason why the victims would say that he had a gun, appellant volunteered that: "The police searched the house, you know. They searched it from then until the next morning and didn't find any guns." The prosecuting attorney was permitted, over the objections of appellant's counsel, to cross-examine appellant with respect to the police search and obtained appellant's admission that a pistol had been found in a box. It is conceded that this pistol was found by a search which the trial court had determined to be unlawful and that evidence found in the search had been suppressed.

We have placed severe limitations upon the use, for the purpose of impeachment of the accused's testimony, of evidence unconstitutionally obtained which would not have been admissible on the prosecution's case in chief. In *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971) we held that the defendant could not be questioned at trial concerning statements made to the police after he was taken into custody, which statements were not admissible as direct evidence of guilt because of the protections guaranteed by the privilege against self-incrimination in the Hawaii Constitution. However, in *State v. Alo,* 57 Haw. 418, 558 P.2d 1012 (1976), we allowed the prosecutor, in cross-examining the defendant with respect to a self-serving statement which he claimed to have made to police at the time of his arrest, to ask questions designed to establish the fact of the defendant's silence after his arrest. In *Alo,* we distinguished the use of post-arrest silence to refute an exculpatory version of events testified to by the accused from its use to impeach the accused's testimony of conduct alleged to be corroborative of the exculpatory version. We quoted with approval the explanation of this distinction in *Doyle v. Ohio,* 426 U.S. 610, n.11 at 632-33 (1976): "In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest."

Here appellant sought to bolster the credibility of his

exculpatory version of the events out of which the charges arose, by testifying with respect to what other persons had done. The principle of *Alo* applies, and the inadmissible evidence obtained by the prohibited search could be referred to in order to impeach, not appellant's testimony as to his actions, but his testimony as to the corroborative circumstances. As was said in *Walder v. United States*, 347 U.S. 62, 65 (1954):

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.

In *Walder*, "the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed narcotics." 347 U.S. at 65. It was held that this assertion on direct examination opened the door, solely for the purpose of attacking the defendant's credibility, to cross-examination of the defendant with respect to his possession of heroin unlawfully seized from his home in his presence and suppressed as evidence in a prior case, and also to testimony with respect to the seizure of the heroin.[1] To the same effect, and following *Walder*, see *United States v. Townes*, 512 F.2d 1057 (6th Cir. 1975).

The judgment is affirmed.

*Winston Mirikitani (Mirikitani and Tongg* of counsel) for defendant-appellant.

---

[1] In *Harris v. New York*, 401 U.S. 222 (1971), the Court applied the principle of *Walder* to permit the use, to impeach his testimony at the trial bearing directly upon the crimes charged, of statements obtained from the defendant after his arrest in violation of the *Miranda* rule, while acknowledging that *Walder* dealt only with impeachment of the defendant as to collateral matters included in his direct examination. Our rejection in *Santiago* of this extension of the *Walder* rule did not imply a rejection of the principle of *Walder*.

*Kendall Wong (Michael W. Gibson* on the brief), Deputy Prosecuting Attorneys, City & County of Honolulu, for plaintiff-appellee.