UNITED STATES of America, Plaintiff-Appellee,

v.

J. Lee HAVENS, Defendant-Appellant.

No. 78–5411.

United States Court of Appeals, Fifth Circuit.

April 5, 1979.

Robert S. McCain, Fort Lauderdale, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Hugh F. Culverhouse, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, GOLDBERG and VANCE, Circuit Judges.

VANCE, Circuit Judge:

J. Lee Havens was convicted of conspiring to import cocaine into the United States,[1] of importing approximately 1490 grams of cocaine into the United States,[2] and of knowingly and intentionally possessing with intent to distribute approximately 1490 grams of cocaine.[3] He received three concurrent eight-year sentences and a fine of $5,000. His appeal to this court challenges the lower court's ruling allowing the introduction of suppressed evidence.[4] We reverse the judgment of conviction and remand for a new trial.

On October 2, 1977, Havens and John Kenneth McLeroth, both of whom were lawyers from Fort Wayne, Indiana, arrived at the Miami International Airport on a flight from Peru. Customs Officer William Percival searched McLeroth and found cocaine sewed into makeshift pockets in a T-shirt under his clothing. McLeroth told the investigating officers that Havens was traveling with him and implicated Havens in the importation of the cocaine. D.E.A. agents arrested Havens, who had cleared Customs approximately four hours earlier, searched him, and seized and searched his luggage without a warrant. No controlled

---

1. In violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963.

2. In violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 18 U.S.C. § 2.

3. In violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

4. Havens' contention that the evidence was insufficient is clearly without merit. We do not treat his other contentions because they involve rulings on matters that are not likely to recur upon retrial of his case.

substance was found. A T-shirt was found, however, from which pieces were cut that corresponded to the pockets sewed to McLeroth's T-shirt. On motion by Havens prior to trial, the T-shirt and other evidence seized during the search of Havens' suitcase were suppressed.

McLeroth was charged along with Havens in the three-count indictment. Immediately before trial McLeroth changed his plea and pleaded guilty to one count of the indictment in exchange for dismissal of two remaining counts. During Havens' trial he testified that he, Havens and other persons were engaged in a scheme to import cocaine into the United States. He claimed that because he needed money desperately he had agreed to become a "mule" and to smuggle cocaine into the United States for Havens.

Havens denied involvement with the cocaine and claimed that he had visited Peru on legitimate business. On direct examination by his own counsel and after he had denied involvement in the importation of the cocaine, Havens was questioned and responded as follows:

Q. And you heard Mr. McLeroth testify earlier as to something to the effect that this material was taped or draped around his body and so on, you heard that testimony?

A. Yes, I did.

Q. Did you ever engage in that kind of activity with Mr. McLeroth and Augusto or Mr. McLeroth and anyone else on that fourth visit to Lima, Peru?

A. I did not.

On cross-examination the prosecutor asked the following questions with the indicated answers:

Q. Now, on direct examination, sir, you testified on the fourth trip you had absolutely nothing to do with the wrapping of any bandages or tee shirts or anything involving Mr. McLeroth; is that correct?

A. I don't . . . I said I had nothing to do with any wrapping or bandages or anything, yes. I had nothing

to do with anything with McLeroth in connection with this cocaine matter.

.    .    .    .    .

Q. And your testimony is that you had nothing to do with the sewing of the cotton swatches to make pockets on that tee shirt?

A. Absolutely not.

Q. Sir, when you came through Customs, the Miami International Airport, on October 2, 1977, did you have in your suitcase Size 38–40 medium tee shirts?

At this point the jury was excused and a discussion between the court and counsel ensued with respect to the admissibility of this line of questions. The court ultimately ruled that the interrogation would be allowed. Havens was then asked,

Q. Mr. Havens, I'm going to hand you what is Government's Exhibit 9 for identification and ask you if this tee shirt was in your luggage on October 2nd, 1975?

A. Not to my knowledge. No.

After defendant rested, Customs Agent Martinez was recalled as a rebuttal witness. The trial court previously had ruled that if Havens admitted on cross-examination that the T-shirt was in his luggage, it could not be introduced into evidence. Because he denied it, Martinez was allowed to testify that the T-shirt was found in Havens' suitcase. Over objection the T-shirt was then received into evidence.

The government argues that introduction of the challenged evidence for impeachment purposes is supported by *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), and its progeny, *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). In *Walder* the Supreme Court approved the introduction into evidence of illegally seized heroin for the purpose of impeaching the defendant's direct testimony that he had never possessed narcotics. *Harris* allowed the impeachment of defendant's direct tes-

timony by a prior inconsistent statement not obtained in conformity with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Oregon v. Hass, supra,* the court similarly allowed impeachment with a prior statement obtained by law enforcement officers after the defendant had requested an attorney. In all three cases the challenged evidence contradicted direct testimony given by defendant in his own defense.

This line of authority is now well ingrained in our jurisprudence. Its policy is stated in *Walder*:

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.

347 U.S. at 65, 74 S.Ct. at 356. These cases should not be read, however, as being in conflict with *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Indeed, the *Walder* court took pains to distinguish the facts before it by pointing out that in *Agnello* the basis of the contradiction was elicited on cross-examination of the defendant.

Agnello testified on direct examination that he had received certain packages from a co-defendant, but that he did not know their contents and would not have carried them if he had known they contained narcotics. On cross-examination he said that he had never seen narcotics. At that point, over his objection, the prosecutor produced a can of cocaine which had been seized in his bedroom and asked him if he had ever seen it. After he denied having seen it, the government was allowed to introduce into evidence the can of cocaine that was the product of an illegal search and previously had been excluded.

In reversing Agnello's conviction the Supreme Court held,

And the contention that the evidence of the search and seizure was admissible in rebuttal is without merit. In his direct examination, Agnello was not asked and did not testify concerning the can of cocaine. In cross-examination, in answer to a question permitted over his objection, he said he had never seen it. He did nothing to waive his constitutional protection or to justify cross-examination in respect of the evidence claimed to have been obtained by the search.

269 U.S. at 35, 46 S.Ct. at 7.

■ From the *Agnello-Walder* framework, two requirements emerge that bear on the admissibility of the otherwise illegal evidence received against Havens. First, the predicate for its use in impeachment must be found in the direct examination of the defendant. It cannot be smuggled into evidence by the prosecutor on cross-examination. Second, the evidence in question must contradict a particular statement made by the defendant. An arguable conflict with a simple denial of guilt does not meet this test. In *Walder* the court said,

[T]he Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.

347 U.S. at 65, 74 S.Ct. at 356 (footnote omitted).

The second requirement is demonstrated by two recent cases involving the interplay of the *Agnello-Walder* holdings under similar facts. In both *United States v. Mariani,* 539 F.2d 915 (2d Cir. 1976), and *United States v. Trejo,* 501 F.2d 138 (9th Cir. 1974), the defendant took the stand, denied guilt, and testified generally in respect to his version of the facts. In neither case did the

defendant testify about the particular object that had been illegally seized until the testimony was elicited from him on cross-examination. Both courts concluded that receipt of the questioned evidence for impeachment purposes constituted error.

 In the present case the controlling rule was obviously misunderstood by the trial judge. The colloquy between the defense counsel and the court, during which the complained of rulings were made, included the following:

> MR. McCAIN: How can he be impeached, Your Honor, if it was not covered on direct, whether or not he had—
>
> THE COURT: It does not have to be covered on direct. If he denies something under oath, which is—

According to the view of the trial judge and the prosecutor, defendant could be asked on cross-examination a question, which answered affirmatively would admit the incriminating tendencies of the illegal evidence, and, answered negatively would allow the subsequent introduction of the illegal evidence for purposes of impeachment. Such a view extends beyond the reach of *Walder, Harris* and *Hass.*

Alternatively, the government now argues that even if the stated basis for the trial court's ruling was incorrect there still was no error. It contends that Havens' impeachment was amply justified by his testimony on direct. Our understanding of the record will not support such a conclusion.

McLeroth testified that on his first trip to Peru he brought back cocaine draped over his body and secured by tape and an ace bandage. Utilization of the T-shirt on subsequent trips was intended to be an improvement. McLeroth first mentioned it in connection with a second trip that proved fruitless because no cocaine could be obtained. According to McLeroth, the pocketed T-shirt was fabricated in the United States and used to carry the "buy" money to Peru.

On direct examination Havens was not asked whether he possessed the incriminating T-shirt at the time he entered the United States or at any other time. His own counsel did not ask Havens anything at all about a T-shirt, nor was he asked about the contents of his luggage. He was first questioned along these lines during cross-examination and all the impeachment evidence was calculated to contradict testimony given by Havens on cross-examination.

The question before us falls squarely within the Supreme Court's ruling in *Agnello.* The trial court's contrary ruling necessitates reversal of Havens' conviction.

REVERSED and REMANDED.