**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Steven EICKMAN, Defendant-Appellant.**

No. 83CA1162.

Colorado Court of Appeals, Div. I.

July 31, 1986.

Rehearing Denied Sept. 11, 1986.

Certiorari Denied Nov. 17, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Seth J. Benezra, Thomas R. Williamson, Deputy State Public Defenders, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Steven Eickman, appeals his conviction, entered on a jury verdict, of possession of eight ounces or more of marijuana. We reverse.

Police officers executed a warrant to search defendant's home for firearms. Defendant and two roomates occupied this leased house. For purposes of ensuring his safety, during the search, the investigating officer opened the door to a basement storage room. In that room he saw several pounds of marijuana and a weighing scale located in plain view. Vice and narcotics officers were contacted, who, after arriving on the scene, obtained defendant's consent for a further search of the house. More marijuana was found inside a sealed box located in a bedroom apparently converted for use as an office. Several items of smoking paraphernalia were found in the living room in plain view. All of this evidence was declared admissible after a suppression hearing, and the case proceeded to trial.

Before the evidentiary phase of the trial began, an *in camera* hearing was held at which the defense complained that on the first day of jury selection, only two days earlier, the prosecution had disclosed its intention to use additional evidence. This included a small baggie containing marijuana, another weighing scale, and a photograph which showed these items sitting next to each other on a cabinet shelf in the kitchen of the home. Prior to this disclosure, there had been no indication that any evidence had been found in the kitchen. The defense moved to suppress any reference to this evidence, but the motion was denied. The trial court recognized the disadvantages represented by the late disclosure but refused to continue the trial for a suppression hearing because the jury had already been impaneled.

In the district attorney's opening statement and during direct examination of the investigating officer, reference was made to the items found in the kitchen. The officer then testified that this evidence might have been discovered and seized after he had found the marijuana located in the storage room but before defendant had given his consent to an extended search of the premises. Defendant objected and another hearing was held. The trial court ruled that it would allow no further reference to this evidence. The court, however, did not at any time clearly indicate whether its ruling was framed as a suppression order on Fourth Amendment grounds or a discovery sanction pursuant to Crim.P. 16.

On direct examination, defendant testified that he had lived in the house for about one month with two roommates, neither of whom he knew well. He stated that he had only been in the basement storage room when he moved in and when he moved out and that the converted bedroom was a common area. While he admitted that he occasionally smoked marijuana and that he had been in possession of small amounts in the past, he consistently denied any knowledge that marijuana was in the house on the night of the search.

At a hearing held to determine the permissible scope of cross-examination, the prosecution argued that it was entitled to use the "suppressed" evidence to impeach defendant's denials. After recognizing that the Crim.P. 16 violation had deprived defendant of the opportunity to litigate Fourth Amendment questions created by the investigating officer's testimony regarding the search, the court ruled that it would permit this use of evidence of the baggie of marijuana because the status of the kitchen as a common area made the question relevant to defendant's denial of knowledge.

On cross-examination, defendant was asked about the search, his relationship with his roommates, and their whereabouts when the search occurred, and his use of marijuana and various smoking paraphernalia. He again denied keeping marijuana in the house but admitted purchasing it in the past and smoking it with friends when they brought it to the house. He further stated that his roommates used marijuana but that he had no knowledge of the amounts they kept for personal use and

that, as lessee of the house, he would not have allowed large amounts to be present there. At this point, the following occurred:

"Q: Did you know that there was any marijuana in the house on the evening of September 15?

"A: No I did not.

"Q: Did you know that there was some marijuana in the kitchen?

"A: No I did not.

. . . .

"Q: The amount of marijuana that you claim to have been possessing and using, you would not need a weighing scale for the purpose of possessing or using that amount of marijuana?

"A: I wouldn't think so.

"Q: Did you know of the presence of a weighing scale in the basement of the house?

"A: No, I did not.

"Q: Is it your testimony, Mr. Eickman, referring to People's Exhibit L, that you have never seen this weighing scale?

"A: That is true. . . .

. . . .

"Q: Is it also your testimony that you were unaware of a similar weighing scale to this in the kitchen cabinet of your house?"

Defendant then admitted knowledge and ownership of the kitchen scale, stating that he occasionally used it to weigh portions of meat. The scale was then admitted into evidence.

During rebuttal, the investigating officer testified that the baggie of marijuana and the scale had been found next to each other in the cabinet, and the photograph was also admitted.

Defendant contends on appeal that he was denied a fair trial by admission of the suppressed evidence in violation of his Fourth Amendment rights under the rule of *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), as adopted in *LeMasters v. People*, 678 P.2d 538 (Colo.1984). We agree.

### I.

■ The People argue that we need not reach the Fourth Amendment question because the evidence was properly admissible as an exercise of the trial court's discretion to fashion remedies for discovery violations under Crim.P. 16. However, the record reveals, and the trial court expressly recognized, the existence of significant unresolved Fourth Amendment questions generated by the seizure of the baggie and the scale. Therefore, we cannot characterize the trial court's ruling as a discovery sanction. *See United States v. Mariani*, 539 F.2d 915 (2nd Cir.1975).

### II.

■ Suppressed evidence may be used to impeach a defendant's direct testimony, *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), and a "defendant's statements, made in response to *proper cross-examination reasonably suggested* by the defendant's direct examination. . . ." *LeMasters v. People, supra, quoting United States v. Havens, supra* (emphasis supplied in *LeMasters*).

This rule is grounded in competing policy considerations: While nothing in exclusionary rule jurisprudence suggests that a defendant should be able to take advantage of a suppression ruling to commit perjury without fear of impeachment, a defendant must be free to take the stand to deny "all elements of the case brought against him without thereby giving leave to the Government" to "smuggle in" during rebuttal evidence illegally obtained and suppressed for purposes of its case-in-chief. *Walder v. United States, supra,* quoted in *LeMasters v. People, supra.* See *United States v. Havens, supra.* In *LeMasters*, therefore, the Colorado supreme court disapproved the use of impeachment evidence with only a tenuous connection to a defendant's testimony.

"The *sine qua non* of impeaching a witness' testimony is that the evidence con-

tradicts his previous statements.... In cases where illegally seized evidence is admitted for impeachment purposes, the nexus between the defendant's statements and the contradictory evidence introduced on cross-examination must be apparent.... When a contradiction purportedly presented by the unconstitutionally obtained evidence is far from obvious, its value is speculative."

*LeMasters*, however, does not provide more precise guidelines as to the degree of contradiction required or the permissible character of the evidence offered to contradict.

### III.

Our analysis of this record focuses upon the narrow question whether each link in such an evidentiary chain must meet the *Havens-LeMasters* criteria. We conclude that it must.

The prosecution attempted to impeach, first, defendant's direct testimony that he did not know that there was any marijuana in the house, and, second, his denial on cross-examination that he knew there was marijuana in the kitchen. Thus, the question regarding the marijuana in the kitchen was intended to cast doubt upon the statements made during defendant's direct testimony, while the cross-examination questions regarding the scale and the admission of the photograph during rebuttal were intended to impeach the second, more specific denial concerning marijuana in the kitchen. Whether defendant knew of marijuana in the common area cabinet is a proper subject for cross-examination, and his response of denial is therefore subject to impeachment under *United States v. Havens, supra.* It is the second occurrence of impeachment that is at issue here.

Defendant's admission of ownership and use of the scale is evidence of access to the cupboard. The photograph showed the close proximity therein of the scale and the marijuana. Taken together, this evidence tends to contradict defendant's assertion that he was not aware of the marijuana in the cupboard. Without defendant's admissions concerning the scale, however, the

photograph has little or no probative value as impeaching evidence.

It is particularly noteworthy that neither the scale found in the storage room, nor the suppressed scale, was mentioned in defendant's direct testimony. His only references to marijuana were to deny knowledge of its presence in the house, an element of the charged offense, and to admit that he occasionally used it. The trial court had earlier suppressed the baggie, the photograph, *and* the scale, but its ruling on the scope of cross-examination allowed questions regarding only the baggie.

Further, an inadequate foundation was established for introduction of the topic of the kitchen scale. The tenor of the question by which the district attorney attempted to link defendant's use of marijuana to the scale already in evidence is, at best, highly speculative, serving only to initiate inquiry regarding the suppressed scale. This inquiry was to be used to impeach defendant's denial of knowledge that there was marijuana in the kitchen, it had not yet been established that this marijuana had been found in a cabinet, let alone the same cabinet in which the scale was located. In short, defendant's knowledge of the presence in the cabinet of the scale was a topic wholly unrelated to any factual predicate before the jury at the time the question was asked, and had, in and of itself, no value as contradictory impeaching evidence.

Questions directed to the topic of the scale were not "reasonably suggested by" defendant's direct testimony. To allow them would be to approve the proposition that the prosecution may broaden the scope of cross-examination to comprehend any matter that might eventually be shown by connecting evidence to be relevant to impeachment of a statement first elicited in cross-examination. Nothing in *Havens* authorizes this result.

We conclude that admission of defendant's testimony regarding the scale was error leading to unfair prejudice in admission of the photograph and the police

officer's testimony on rebuttal. We further conclude, in light of the circumstantial nature of the prosecution's case as revealed by the record as a whole, that the jury's assessment of defendant's credibility may well have been determinative of its verdict. We cannot say, therefore, that admission of this evidence was harmless error. *Cf. LeMasters v. People, supra.*

The judgment is reversed and the cause is remanded for a new trial.

PIERCE and METZGER, JJ., concur.