CRAWFORD, Chief Judge
(concurring in part and in the result):
The right to counsel[1] and the right not to incriminate oneself[2] are hallmarks of our adversary system. But a defendant may not use the shield of these constitutional rights to prevent the Government from contradicting the untruths and reasonable inferences that the factfinders could logically draw from the defense cross-examination.[3]
The Government may not introduce as substantive evidence in the first instance that a person invoked his or her right to silence and/or right to counsel.[4] However, these invocations may be used to impeach any witness, including a defendant. Moreover, when the defendant opens the door, the Government may forcefully rebut the evidence and its reasonable inferences.[5] Remaining silent in the face of an accusation or remaining silent by invoking one’s right without any explanation at the time is evidence of guilt. There may be reasonable explanations for one’s silence — “The statement is false”; “I *126 don’t trust you”; “I want to think about it”; “I want to know what others have said before I make a statement.” However, these explanations do not undercut the inference that silence, without explanation, is evidence of guilt.
On cross-examination, defense counsel brought out that appellant invoked his right to counsel because of the untruths in the typewritten statement. The Government had a right to rebut this assertion, to include arguing its falsity. For this reason, I do not agree with the rationale of the majority, but concur in the result.
Appellant, like the defendant in United States v. Beason, 220 F.3d 964 (8th Cir.2000), sought to take advantage of a constitutional right and use it as a sword. The defense in Beason sought to take advantage of the rale in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This rule provides that at a joint trial, co-defendant A’s confession, which implicates co-defendant B, is not admissible against B. In limine instructions would be inadequate because co-defendant B cannot test through cross-examination the evidence set forth in A’s confession.
In Beason, the Government introduced evidence that Beason was the kingpin who was selling drags from his track while hiding hundreds of thousands of dollars in its inside compartments. Like most drag kingpins, Beason had some runners. One of these was an individual named Washington. Defense counsel asked FBI Agent Hempen whether Washington, who had a prior drag arrest, was the source of the information concerning where the money was hidden in the track. The Government argued and the trial judge agreed that this question opened the door for a different agent to testify about other information provided by Washington — information that revealed the track’s ownership, how the money was collected, how the money was given to Washington, and who was giving directions concerning where to hide it in the track. On appeal, the Eighth Circuit reasoned:
Beason’s theory of defense at trial was that Washington orchestrated the events in question, while Beason was an unknowing bystander. We find defense counsel’s questioning, stressing not only that information regarding the hidden currency did not come from Beason, but also that it came from Washington, an individual with a prior drag record, did more than simply dispel an assumption that Beason provided the information. It could have created a misleading inference to the jury that Washington was the “bad guy.”
220 F.3d at 968.
Likewise, in United States v. Havens, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), the Court prohibited the defense from using a constitutional right as a sword in order to prevent the Government from contradicting the defense theory of the case. The Court recognized that in Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), impeachment with illegally obtained evidence was permitted because of what the defendant said on direct examination. “These cases repudiated the statement in Agnello [v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925),] that no use at all may be made of illegally obtained evidence.” 446 U.S. at 625, 100 S.Ct. 1912.
In Havens, the Court of Appeals held that evidence illegally seized could only be used to impeach if it contradicted a particular statement made by the accused during direct examination. Accordingly, since a T-shirt taken from Havens’s luggage was tainted evidence, it could not be used, because Havens was asked nothing during his direct testimony about the T-shirt or luggage. The Court of Appeals also relied on the statement in Agnello that Agnello had done nothing “to justify cross-examination in respect of the evidence claimed to have been obtained by the search.” Id.
In reversing, the Supreme Court restricted the reach of Agnello to cases of cross-examination having too tenuous a connection with any subject opened by direct examination to permit impeachment by tainted evidence. *127 Relying on Harris and Hass, the High Court indicated that the objective of the exclusionary rule is served without extending it to legitimate cross-examination needed to satisfy the fundamental, truth-seeking goal of our legal system. Id. at 626, 100 S.Ct. 1912.
This is not an instance where there was an inadvertent opening of the door. From the opening statement through final argument and at numerous points in between, the defense set forth their theory of the case: that the statement typed by the agents who had questioned appellant was false, and when he reviewed that written statement and its falsity, he requested counsel. Defense counsel’s eliciting testimony that appellant invoked a constitutional right was a conscious, intentional act to undermine the law enforcement officers and support the defense theory of the case. Thus, the Government had the right to rebut all reasonable inferences set forth by the defense.
As to the trial counsel’s argument, there was no error. The defense theory of the case was that appellant gave total cooperation until the agents sought to get him to sign a false statement. The defense evoked this theory numerous times during the trial. A trial judge is not required to count the number of times the trial counsel responds to the defense theory, and in fact, some of the prosecution’s statements as to the theory of the case are paraphrases of what the defense was setting forth throughout the trial. As the Air Force Court of Military Review once observed:
A criminal trial is not a tea dance, but an adversary proceeding to arrive at the truth. Both sides may forcefully urge their positions so long as they are supported by the evidence. Considering the trial counsel’s closing argument in toto, it was within the bounds of fair comment considering the state of the evidence.
United States v. Rodriguez, 28 MJ 1016, 1023 (AFCMR 1989).
For the reasons mentioned above, I concur in the result as to Issue I and concur on Issue II.

. “In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” U.S. Const, amend. VI.

. “No person shall ... be compelled in any criminal case to be a witness against himself....” Id. at amend. V.

. See, e.g., United States v. Havens, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980).

. See, e.g., Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

. See Havens, supra.