UNITED STATES of America, Defendant-Appellee,

v.

Ambrose John FUSCO, Plaintiff-Appellant.

No. 84–1531
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1984.

Rehearing Denied Jan. 2, 1985.

---

E.G. Morris, Austin, Tex., for plaintiff-appellant.

Edward C. Prado, U.S. Atty., Sidney Powell, Archie Carl Pierce, Asst. U.S. Attys., San Antonio, Tex., for defendant-appellee.

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Ambrose John Fusco was convicted in a jury trial on one count of violating 21 U.S.C. § 963, conspiracy to import a controlled substance, marijuana, and on two counts of violating 21 U.S.C. § 843(b), use of a communicative device to facilitate the commission of a felony. Fusco complains on appeal that the trial court allowed a Drug Enforcement Administration agent, Don Stone, to testify to specific instances of the past participation of Ayla Schbley, an informant, in DEA investigations, before Schbley had testified or been subjected to cross-examination by the defense. Fusco's challenge to Stone's testimony rests on the premise that it bolstered Schbley's credibility. From this premise, Fusco asks us to conclude that the admission of this testimony constituted two reversible errors: (1) bolstering the credibility of a witness who had not yet been impeached; and (2) accomplishing that bolstering through the citation of Schbley's specific prior acts, in violation of Federal Rule of Evidence 608(b). We find Fusco's premise to be factually flawed. Rather than casting Schbley as a generally good and truthful person, Stone's testimony showed that the context in which Schbley worked as an informant was unlike that of most informants, and that Schbley was therefore less likely to be biased. We affirm.

## I

The government sought to prove at trial that Fusco, in cooperation with Schbley, had planned to rent an airplane to be used to import marijuana from Mexico. After two preliminary witnesses, the government called DEA Agent Stone. Over the objections of Fusco's counsel, Stone stated that before Schbley volunteered to become an informant, Stone had known of no illegal activity by Schbley. Stone also said that Schbley's work as a DEA informant had led to the indictment of approximately 11 defendants, as well as the seizure of 44 pounds of cocaine, 900 pounds of marijuana, and half a pound of heroin, and that the government had paid Schbley a total of $45,000 for his services in these investigations. Stone then testified regarding Schbley's dealings with Fusco.

The government next called Schbley, who testified in detail regarding his involvement in Fusco's attempt to import marijuana. He described several meetings and phone conversations between the two men, many of which were clandestinely tape-recorded by Schbley. Schbley described for the jury those conversations that were not recorded, and also interpreted and supplied many additional details concerning the conversations whose recordings were introduced

into evidence. On direct examination, the government questioned Schbley extensively about his prior history of illegal activities.

In a wide-ranging cross-examination, defense counsel tried to paint Schbley as biased. In an attempt to show his motivation to fabricate the contents of the unrecorded conversations between himself and Fusco, defense counsel dwelled on the money Schbley would be paid if the prosecution were successful and the payments already made to him. The defense also sought to establish that Schbley had been involved in arms smuggling, narcotics trafficking, and was in trouble with the IRS.

## II

■ Fusco's challenge to his conviction relies on evidentiary principles that use "credibility" as a shorthand expression for a witness's general truthfulness. These principles, embodied in Federal Rule of Evidence 608 and in the common-law rule against bolstering an unattacked witness, limit the use of evidence designed to show that the witness has done things, unrelated to the suit being tried, that make him more or less believable per se. Stone's testimony, however, did not address Schbley's truthfulness or untruthfulness in the abstract, but instead shed light on whether the circumstances of Schbley's participation in this and other DEA investigations biased him in favor of the government in this particular trial. Fusco's arguments are therefore inapposite.

Standing alone, the fact that Schbley was paid large sums for participating in government investigations, and for testifying against the targets of those investigations, demonstrates a potential motive for Schbley to slant his testimony in favor of the government. The prosecutor explained at trial that Agent Stone's description of Schbley's past work for the government was meant to place in context the facts from which the defendant would ask the jury to infer his bias. The government urged that it was important that it be able to explain that Schbley had received "appropriate sums for the services he's per-formed to the U.S. government." Presumably, the government intended to show that Schbley had not simply been paid for saying the right things on the stand, or $45,-000 for this case, but had been compensated for the time he spent participating in the investigation, and had received a reasonable "reward" in light of the genuine value of contraband seized. Stone's statement that to his knowledge, Schbley had not been in trouble with the law before beginning his undercover work was elicited to dispel the anticipatable suggestion that the government might be using threats of prosecution to induce Schbley to testify favorably.

■ Because the government was trying to convince the jury that Schbley was not biased, it was not "bolstering" Schbley in a prohibited way, and Schbley's prior cooperation was not "extrinsic," as those terms are used in Federal Rule of Evidence 608. Bias, as opposed to general veracity, is not a collateral issue. *United States v. James,* 609 F.2d 36, 46 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); *Johnson v. Brewer,* 521 F.2d 556, 562 n. 13 (8th Cir.1975) (collecting authorities); *see Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Evidence of past behavior that proves or disproves bias is therefore admissible notwithstanding Rule 608(b). *United States v. Hodnett,* 537 F.2d 828 (5th Cir. 1976); *United States v. Corbin,* 734 F.2d 643, 655 (11th Cir.1984); *United States v. Ray,* 731 F.2d 1361, 1364 (9th Cir.1984); *James, supra; United States v. Rios Ruiz,* 579 F.2d 670, 673–74 (1st Cir.1978). Because evidence of bias or lack of bias is substantive, rather than collateral, it may be developed on direct examination, as well as cross-examination, just like any other substantive evidence.

Under Rule 611(a), the court has the power to control the order of presentation of otherwise-admissible evidence. Allowing the government to anticipate the attack upon its key witness can be a dangerous practice and ordinarily ought to be avoided, both because the prediction may be inaccu-

rate and because such anticipations have a tendency to become self-fulfilling prophecies. Here, these risks were not realized. Thus, we conclude that the district court did not abuse its wide discretion under Rule 611(a). A trial judge who is cognizant of the risks is not required to ignore his experience in trying such cases and engage in a pretended ignorance that defendant's line of attack is yet unknown. Nor are we.

AFFIRMED.