# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1546

_____

United States of America

*Plaintiff - Appellee*

v.

Yoirlan Tome Rojas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: March 14, 2016
Filed: June 27, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Yoirlan Tome Rojas guilty on several charges related to his use of counterfeit credit cards. He now appeals, claiming that the district court[1] plainly erred at trial by allowing a Government witness to testify to the ultimate question of

_____

[1]The Honorable Mark. W. Bennett, United States District Judge for the Northern District of Iowa.

whether certain acts constituted the crime of identity theft. He also argues that the court abused its discretion by permitting the introduction of impeachment evidence to undermine his assertion that he lacked criminal intent. We affirm.

I.

On November 6, 2013, police received a call from a victim whose credit card information had been used without authorization at a Walmart store in Storm Lake, Iowa. A Walmart employee assisted police in retrieving the store's video recordings, which showed that a man in brown coveralls had made the fraudulent purchases. The culprit had attempted several transactions at multiple registers in the store, only some of which were successful. The store's transaction records revealed that the culprit purchased approximately $600 in store gift cards and merchandise on November 6. Police used the video images to create a flyer depicting the culprit and his two-tone Chevy Silverado pick-up truck.

Several days later, a Storm Lake police officer saw the truck and followed it to a driveway on a residential street. The officer noticed that the driver was wearing the same brown coveralls worn by the man in the Walmart video. The officer approached the driver, Yoirlan Tome Rojas, and asked if he would go to the police station for an interview. Rojas agreed. While Rojas was at the station, a second victim called the Storm Lake police to report that her husband's credit card information had been used without authorization at the same Walmart store several months earlier on September 13. Rojas remained at the station while one officer went to the store to obtain a video recording of the September 13 fraudulent transaction. Upon viewing the video, police confirmed that the same culprit had made fraudulent purchases on both occasions. Police identified Rojas as that culprit.

Based on this information, police obtained a search warrant for Rojas's apartment. Inside, they found keys to a storage locker in the apartment building's

hallway and a shaving razor of the type purchased in one of the fraudulent Walmart transactions. Police then obtained a search warrant for the storage locker. The locker contained approximately 244 counterfeit credit cards, including a card bearing the sixteen-digit account number that had been used fraudulently to purchase gift cards on November 6, a map listing all of the Walmart stores in Iowa, and gift cards from various stores, including Walmart.

A grand jury charged Rojas with several crimes related to the credit card fraud, including use of counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(1); possession of fifteen or more counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(3); money laundering, in violation of 18 U.S.C. § 1956(a)(1); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). At the time of his arrest, Rojas had several pairs of nearly identical credit and debit cards in his wallet. Although all of the cards bore his name, one card in each pair had been re-encoded with account information that did not belong to Rojas and that did not match the number embossed on the front of the card. Prior to trial, Rojas filed a motion to suppress these cards as illegally seized evidence. The Government did not oppose this motion, and the court granted it.

During trial, the Government presented the testimony of several law enforcement officials who had been involved in the investigation. The officers testified that a counterfeit credit card bearing the information associated with the November 6 victim had been found in Rojas's storage locker. The prosecutor asked one of the Government's witnesses, Special Agent Michael Hawkins: "[I]f anyone were to use this [credit] card without the [owner's] permission, would that constitute identity theft?" Special Agent Hawkins responded that it would. Rojas did not object to the question or to the testimony it elicited.

Rojas opted to testify on his own behalf. He admitted using the counterfeit credit cards at the Walmart in Storm Lake; however, he maintained that he did not

know that the cards were counterfeit. He stated that he had accepted the cards as payment for his work as a mechanic because he believed that they were gift cards, and he maintained that he did not understand the difference between credit cards and gift cards. The district court allowed the Government to use extrinsic evidence—specifically, the pairs of credit and debit cards found in Rojas's wallet at the time of arrest—to impeach these assertions during the cross examination of Rojas. The court also permitted Special Agent Hawkins to testify as a rebuttal witness that one card in each pair was authentic and unaltered, while the other had been re-encoded with electronic account information that belonged to someone other than Rojas. At the close of evidence, the jury found Rojas guilty of all charges. The court sentenced Rojas to 51 months' imprisonment and two years' supervised release.

II.

In this appeal, Rojas first contends that the district court improperly allowed Special Agent Hawkins to invade the province of the jury when he testified to the ultimate question whether certain conduct constituted the crime of identity theft. Because Rojas did not object to this statement during trial, we review only for plain error. *See United States v. Eagle*, 515 F.3d 794, 801 (8th Cir. 2008). An appellant demonstrates plain error if he shows that: "(1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights." *United States v. Thornberg*, 676 F.3d 703, 706 (8th Cir. 2012) (quoting *United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011)). If an appellant makes this showing, an appellate court "may then exercise [its] discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Eagle*, 515 F.3d at 801. Here, even if we assume *arguendo* that the court erred by permitting Special Agent Hawkins's testimony, we conclude that Rojas has not shown that the error affected his substantial rights.

-4-

To demonstrate that his substantial rights were affected, "a defendant is generally required to show 'a reasonable probability that the outcome [of the district court proceedings] would have been different absent the alleged error.'" *United States v. Wallace*, 713 F.3d 422, 427 (8th Cir. 2013) (quoting *United States v. Yielding*, 657 F.3d 688, 707-08 (8th Cir. 2011)). Rojas cannot meet this burden because the record reveals that, independent of Special Agent Hawkins's testimony, "there was ample evidence upon which a jury could have found that [Rojas] committed the substantive offense charged." *See United States v. Farrell*, 563 F.3d 364, 378 (8th Cir. 2009) (finding no plain error even though the court allowed a witness to "usurp[] the jury's function" by opining on the strength of the Government's case and the credibility of its witnesses).

At trial, the court accurately instructed the jury that the crime of aggravated identity theft has four elements that the Government must prove beyond a reasonable doubt: (1) the defendant knowingly possessed or used some means of identification—here, credit card account information, (2) the defendant knew that the means of identification he possessed or used belonged to someone else, (3) the defendant used or possessed this means of identification without lawful authority, and (4) the defendant possessed or used the means of identification during and in relation to commission of a felony offense involving fraud. *See* 18 U.S.C. § 1028A(a)(1), (c); *see also* 18 U.S.C. § 1028(d)(7)(D) (defining a "means of identification" to include access devices); 18 U.S.C. § 1029(e)(1) (defining "access device" to include any "account number, electronic serial number . . . or other means of account access that can be used . . . to obtain money, goods, services, or any other thing of value"). During the three-day trial, several Government witnesses explained that police found more than 200 counterfeit access devices in Rojas's storage locker, including a counterfeit credit card that bore the account information of the victim who had reported fraud to the police on November 6. Witnesses also identified Rojas as the man in the video who made the fraudulent purchases at the Storm Lake Walmart using the victims' information on September 13 and November 6.

Circumstantial evidence supported the jury's conclusion that Rojas acted with the requisite intent. *See United States v. Hudson*, 717 F.2d 1211, 1213 (8th Cir. 1983) (explaining that intent may be proven with circumstantial evidence). For example, the jury heard that Rojas kept the counterfeit credit cards hidden in a bag in his locked storage locker and that many of the cards were embossed with a 16-digit number, a credit card or bank logo, and Rojas's name, even though the cards' magnetic strips were encoded with someone else's account information. A Walmart employee also testified, and store video confirmed, that Rojas had purchased several high-value gift cards in quick succession from various registers using different credit cards on both September 13 and November 6. These circumstances and this unusual course of conduct supported a finding of intent. *See Flores-Figueroa v. United States*, 556 U.S. 646, 656 (2009) (noting that intent "is generally not difficult to prove" in the classic case of identity theft). Because the jury instructions accurately reflected the elements of aggravated identity theft and because the Government presented ample evidence to prove each of these elements, we conclude that Rojas has failed to show a reasonable probability that, but for Special Agent Hawkins's testimony, the result of the proceedings would have been different. Accordingly, we see no plain error. *See Farrell*, 563 F.3d at 378.

We next turn to Rojas's contention that the court abused its discretion by allowing the Government to impeach his testimony with the credit and debit cards found in his wallet and with the rebuttal testimony of Special Agent Hawkins. This court "review[s] evidentiary rulings of a district court for abuse of discretion, giving substantial deference to the district court's determinations." *United States v. Manning*, 738 F.3d 937, 942 (8th Cir. 2014) (internal citations omitted). We "reverse only if an error 'affects the substantial rights of the defendant' or has 'more than a slight influence on the [jury's] verdict.'" *Id.* (alteration in original) (quoting *United States v. Yarrington*, 634 F.3d 440, 447 (8th Cir. 2011)).

Rojas notes that the cards recovered from his wallet had been suppressed by the trial court and that none of his charges stemmed from their possession. He thus contends that the introduction of this evidence violated Federal Rule of Evidence 608, a rule stating that extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. This argument misconstrues the rule's purpose and application. The advisory committee notes to Rule 608(b) indicate that the prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to "show that the witness has done things, unrelated to the suit being tried, that make him more or less believable per se." Fed. R. Evid. 608 advisory committee's note to 2003 amendment (quoting *United States v. Fusco*, 748 F.2d 996, 998 (5th Cir. 1984)). The rule does not address the admissibility of extrinsic evidence used to impeach a witness through bias, lack of competency, or contradiction. *Id.* And here, the Government introduced the cards only to impeach Rojas's claims that he did not have criminal intent and that he did not understand the difference between gift cards and credit cards.

During cross examination, the Government used the cards found in Rojas's wallet to explore Rojas's understanding of credit cards generally, inquiring as to how he had applied for his legitimate cards and which banks had issued them to him. When confronted with this evidence, Rojas admitted that he had applied for one card in each pair. Special Agent Hawkins, in his rebuttal testimony, then confirmed that only one card in each pair was authentic, while the second had been encoded with an account number that did not belong to Rojas. To ensure the jury considered this evidence only to impeach Rojas's testimony and not as an independent basis for its verdict or proof of Rojas's general character for truthfulness, the court instructed the jury that the cards should be considered solely for the limited purpose of impeachment, *i.e.*, to help the jury determine whether Rojas had told the truth when he said he did not understand credit cards and that he lacked criminal intent when he made the fraudulent purchases at the Storm Lake Walmart in September and

November 2013. Indeed, the court warned the jury that the extrinsic evidence was "not admissible to show that [Rojas] [wa]s guilty of any charges against him." Because the Government used the evidence for the limited purpose of impeachment and because the court gave this instruction, we find that the court did not abuse its discretion by admitting the challenged evidence. *See Walder v. United States*, 201 F.2d 715, 717 (8th Cir. 1953), *aff'd*, 347 U.S. 62 (1954) (holding that evidence obtained in an illegal search was admissible because "the evidence was introduced for the sole purpose of impeaching the credibility of the appellant, and the court was meticulous in protecting his rights by instructions limiting the consideration of the evidence to the one point for which it was admitted").

We see no merit to Rojas's related argument that admission of the cards and Agent Hawkins's rebuttal testimony violated Federal Rule of Evidence 403. As discussed above, the evidence was relevant to contradict Rojas's claims of misunderstanding and lack of criminal intent. We afford great deference to a trial judge's weighing of probative value against prejudicial effect under Rule 403. *See Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 939 (8th Cir. 2013). In light of this deference and the court's limiting instruction reminding the jury not to convict on the basis of this evidence, we see no abuse of discretion. *See United States v. Ellison*, 616 F.3d 829, 834 (8th Cir. 2010) (approving admission of evidence in part because the court limited the scope of the evidence to the issue of impeachment).

Finally, we dismiss in short order Rojas's contention that admission of the credit and debit cards found in his wallet ran afoul of the court's pretrial decision to suppress the evidence. This argument ignores the well established rule that "illegally seized evidence, even if otherwise inadmissible, may be used to impeach a testifying defendant." *United States v. Rowley*, 975 F.2d 1357, 1361 (8th Cir. 1992). As the Supreme Court stated in *Walder*, 347 U.S. at 65:

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained.  It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.  Such an extension of the [exclusionary] doctrine would be a perversion of the Fourth Amendment.

## III.

For the foregoing reasons, we affirm.

_____